**STATE of Missouri, Plaintiff–Respondent**

**v.**

**Keith L. TRIPP, Defendant–Appellant**

**and**

**Keith L. TRIPP, Appellant**

**STATE of Missouri, Respondent.**

Nos. 20008, 20913.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 13, 1997.

A. Renae Adamson, Asst. Appellate Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, Jefferson City, for respondent.

PARRISH, Judge.

Keith Tripp (defendant) was convicted following a jury trial of robbery in the second degree (Count I), § 569.030;[1] burglary in the first degree (Count II), § 569.160; burglary in the second degree (Count III), § 569.170; and stealing (Count IV), § 570.030. He was charged and tried as a prior offender. § 558.016.2, RSMo Supp.1993.

Defendant filed a motion for post-conviction relief as permitted by Rule 29.15.[2] The motion was denied following an evidentiary hearing.

---

1. References to statutes are to RSMo 1986, unless stated otherwise.

2. References to rules other than to Rule 29.15(m) are to Missouri Rules of Court 1995. References to Rule 29.15(m) are to Missouri Rules of Court 1996.

Defendant appeals the judgment of conviction in his criminal case (No. 20008) and the order denying his Rule 29.15 motion (No. 20913). The appeals were consolidated pursuant to Rule 29.15(*l*) as it existed on the date defendant's motion was filed. *See* Rule 29.15(m). No. 20008 is affirmed. No. 20913 is reversed and remanded with directions.

## No. 20008

### Facts

At approximately 12:20 a.m. the morning of January 19, 1994, defendant and his half-brother,[3] Daniel Tripp, forcibly entered the residence of Dennis Smithson. Daniel believed there were baseball cards valued at about $8,000 and money in the house. Daniel kicked open a back door to the residence. Smithson was home. Smithson heard the noise and screamed—defendant and Daniel thought Smithson was at work.

Smithson believed his furnace had exploded. He got out of his bed. When he entered his dining room, Smithson was met by Daniel. Smithson was struck in the face. He was told to shut up and get on the floor.

Daniel went to the front door. He opened the door for defendant. Defendant ran past Smithson and entered a bedroom. Defendant put change from the top of a dresser into a sack. A few minutes later one of the intruders asked Smithson if he had any rope. He said he did not. Daniel told defendant to tie him up. Defendant cut cord from Smithson's telephone and used the cord to tie his feet together. Defendant tied his hands behind his back. Smithson was placed face down on the floor. Daniel had a gun. He clicked it and told Smithson, "I sure wouldn't want to have to shoot somebody."

After tying Smithson, defendant and Daniel went into the bedroom and turned on the lights. They came out of the bedroom and asked Smithson if he had a safe. He answered, "[N]o."

The house became quiet. Smithson explained:

. I then began to try to get untied. And surprisingly to myself, I was able to get untied, my hands. And I—I, of course, you know, rose up and got my feet untied. And during this time I was getting untied, I had this real bad feeling that there were—they were behind me on the porch or behind me waiting for me to get untied.

Well, I got untied, and I immediately turned to the telephone. Even though I realized the phone lines had been cut, I—I just tried the telephone. There was no dial tone. And I simply ran out the front door and ran all the way to the police station.

After the burglary, cash was missing from Smithson's billfold. There were two keys missing. The change that was in the bedroom was gone. Before the burglary there was about $60 in the billfold. The change that was missing was estimated to be $40 to $60.

Around noon, January 25, 1994, defendant and his two half-brothers, Daniel Tripp and Richard Tripp II, went to John Hutchison's residence located on a farm about 5 miles south of Nevada, Missouri. They traveled in defendant's wife's orange Toyota Tercel automobile. Richard was driving. When they reached the Hutchison residence, Richard got out of the car and knocked on the front door of the residence. No one answered. Defendant and Daniel got out of the car and approached the residence. Richard got back in the car and drove away.

Daniel kicked in the front door. He and defendant entered the house and searched for money. They took gold necklaces, a black ski mask, rolls of coins and other items. They placed them in a backpack they found in the house.

Hutchison returned home unexpectedly. Daniel saw him drive up to the residence in a

**3.** Richard Tripp II, Daniel Tripp's brother, testified that defendant was his "stepbrother"; however, when asked if he and defendant had a "common mother or father" he answered, "Father." Richard testified that Daniel Tripp was his brother. Although Richard identified defendant as a stepbrother, in view of his answer that

he and defendant had a common father, this court infers they were half-brothers and has characterized them (as well as defendant and Daniel Tripp) in that manner in this opinion. Respondent's brief characterized Daniel and Richard as defendant's half-brothers.

pickup truck. Hutchison got out. He had his back toward the house getting something from behind the seat of the pickup.

Defendant and Daniel left the house through a sliding back door. They were carrying the backpack. Defendant picked up a portable phone as he was leaving the house. He threw the phone into the back yard in an effort to prevent Hutchison from calling law enforcement officers.

John Hutchison began unloading feed from his pickup. He heard noises behind the house. He walked to the back of the house and saw defendant and Daniel running away. He saw the back door to the house standing open. Hutchison shut the door and noticed that items in the house had been ransacked. He returned to his pickup and went after defendant and Daniel.

Defendant and Daniel ran to their car. Richard was there. He got in the back. Defendant and Daniel got in the car and drove away.

Hutchison saw the orange Toyota. It was standing still when he first saw it. He followed the Toyota but was unable to keep it in sight. After he lost sight of the car, he went to the Vernon County Sheriff's office in Nevada, Missouri, and reported what had happened.

Defendant, Richard and Daniel drove to Nevada to Daniel's house. They left the stolen items there and changed clothes. The road to the Hutchison house had been muddy so they decided to take the car to a car wash.

An off-duty deputy sheriff observed the three men at the car wash. The deputy had heard a radio transmission about a burglary and a description of an orange car. He contacted the sheriff's dispatcher and held the three until other officers and Hutchison arrived. Hutchison identified the orange car as the one he had followed from his house.

A check of the Hutchison house revealed that the front door had been kicked in; that two bedrooms and a closet had been ransacked. The cordless telephone was found outside behind the house in the area where the two intruders had run. There was $45 in change, four necklaces and a $5 bill missing from the house. Hutchison noticed a ski

mask missing and that two pairs of coveralls had been moved. A search warrant was obtained for Daniel's residence. Officers seized items that Hutchison identified as his property.

### Allegations of Trial Court Error

Defendant contends the trial court erred in denying a motion to sever the offenses with which he was charged for separate trials and in giving Instruction No. 5, the verdict-directing instruction for robbery in the second degree, which he argues did not comply with MAI–CR3d 323.04.

Point I is directed to the four-count information on which defendant was tried. Counts I and II charged offenses that were committed January 19, 1994. The offenses charged in Counts III and IV occurred January 25, 1994. Defendant filed a Motion for Severance of Offenses the morning of trial. It requested the trial court to sever Counts I and II from Counts III and IV for trial. The trial court denied the motion.

Point I contends the trial court erred in denying defendant's Motion for Severance of Offenses. It alleges the offenses "were improperly joined for trial"; that the presentation of evidence of separate criminal acts unduly prejudiced defendant. Point II argues further that even if the joinder were proper, the trial court abused its discretion in denying the request for severance.

■ Point I presents two distinct issues. The first issue is whether the offenses were properly joined in the information. *State v. Forister*, 823 S.W.2d 504, 508 (Mo.App.1992). If the joinder is found to have been proper, the second issue must be addressed. The second issue is whether the trial court abused its discretion by failing to sever the offenses and trying them in a single prosecution. *Id.*

Joinder is either proper or improper under the law, while severance is within the trial court's discretion. [*State v. Sims*, 764 S.W.2d 692, 696 (Mo.App.1988).] Joinder addresses the more basic question of what crimes can be charged in a single proceeding, while severance presupposes proper joinder and leaves to the trial court's dis-

cretion the determination of whether prejudice may or would result if charges properly joined were tried together. *Id.*

Joinder is governed by Section 545.140(2), RSMo 1986, which provides as follows:

> Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Joinder of more than one offense in a single indictment or information is also provided for in Supreme Court Rule 23.05 which states:

> *Misdemeanors or Felonies—Indictment or Information–Joinder of Offenses*
>
> All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

*State v. Olds,* 831 S.W.2d 713, 718 (Mo.App. 1992).

■ Similar tactics followed in the commission of crimes suffice to show acts "of the same or similar character." *State v. White,* 755 S.W.2d 363, 367 (Mo.App.1988). Tactics need only resemble or correspond with tactics used in another joined offense; they need not be identical. *State v. Forister,* 823 S.W.2d at 509. "For joinder to be proper, the manner in which the crimes were committed should be so similar that it is likely that the same person committed all the

charged offenses." *State v. White,* 755 S.W.2d at 367. The fact that a defendant acts with different persons in committing different crimes does not prevent offenses from being of the same or similar character. *Forister,* 823 S.W.2d at 509–10.

■ Similar tactics were followed in committing the offenses in this appeal. Both places that were burglarized were residences. The times when the burglaries were committed were times when defendant and his accomplices had reason to believe the occupants of the residences were not home— they believed Smithson was at work; Richard knocked on the front door at the Hutchison residence and no one answered.[4] The burglars were looking for money. They took significant amounts of change from both places. Entry was gained at both residences in the same manner, by kicking in a door. The manner in which the two series of crimes were committed was sufficiently similar that it is likely they were committed by the same person. The offenses denominated Counts I and II were sufficiently similar in character to those denominated Counts III and IV to permit joinder.

■ The remaining question with respect to Point I is whether the trial court abused its discretion by refusing to sever the two sets of offenses for separate trials. For there to have been an abuse of discretion, three things must have occurred. A written motion requesting separate trial of a particular offense must have been filed and denied. Defendant must have demonstrated to the trial court that he was subject to substantial prejudice if the offenses were tried together. There must have been a showing of bias or discrimination against the defendant that required a separate trial. Rule 24.07; § 545.885.2.

■ A written motion for severance was filed albeit not until the date of trial. In ruling on the motion the trial court was

---

4. The element that distinguished the Smithson burglary from the Hutchison burglary was Smithson's unexpected presence when that burglary occurred. Smithson's presence elevated the offense from burglary in the second degree to burglary in the first degree. *See* §§ 569.160.1(3) and 569.170. The fact that Smithson was present and force was required to complete the theft that occurred at his residence made the theft robbery in the second degree; whereas the theft at the Hutchison residence, whose occupants were not home, was stealing. *See* §§ 569.170 and 570.030.1.

required to weigh the benefits of trying the offenses simultaneously against any potential prejudice to defendant. *State v. White, supra,* at 368.

The benefit a court derives from trying offenses simultaneously is the economy of judicial time. *Id.* Factors considered in assessing whether a defendant will be prejudiced if multiple offenses are tried together include the number of offenses charged, the complexity of the evidence expected to be offered, whether the fact-finder should be able to distinguish the evidence and apply the law intelligently to each offense. *Id.*

■ There were four offenses charged. Two offenses were committed January 19, 1994. Two were committed January 25, 1994. The offenses on each date included a residential burglary and a theft that resulted from the burglary. The evidence related to each set of offenses was distinct and uncomplicated. There was nothing before the trial court that would have caused it to believe a jury could not distinguish between the evidence offered as to each set of offenses and apply that evidence to the appropriate occurrence.

Further, jury Instruction No. 11, patterned after MAI–CR3d 304.12, told the jury that a separate offense was charged in each count; that each count was to be considered separately. The jury was instructed to and did return a separate verdict for each offense charged.

The trial court did not abuse its discretion in denying the request for severance. There were no circumstances that indicated defendant would be unfavorably prejudiced to an extent outweighing benefits available to the court if the cases were tried together. Point I is denied.

Point II alleges the trial court erred in giving Instruction No. 5, the verdict-directing instruction for robbery in the second degree. Defendant argues that Instruction No. 5 did not conform with MAI–CR3d 323.04 and note 4 of its Notes on Use; that it did not set

forth all essential elements of the charged offense in that there was no requirement that the jury find why defendant may have used force against the victim.

■ Defendant acknowledges that no specific objection to Instruction No. 5 was made at trial or in his motion for new trial.[5] The point was, therefore, not preserved for appellate review. *See State v. Dunagan,* 772 S.W.2d 844, 850 (Mo.App.1989). He requests that the issue raised in Point II be reviewed for plain error.

Instruction No. 5, a modification of MAI–CR3d 323.04 (1–1–87), states:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 19, 1994, in the County of Vernon, State of Missouri, the defendant took money, which was property owned by Dennis G. Smithson, and

Second, that defendant did so for the purpose of withholding it from the owner permanently, and

Third, that defendant in so doing used physical force or threatened the immediate use of physical force on or against Dennis G. Smithson for the purpose of stealing,

then you will find the defendant guilty under Count I of robbery in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty under Count I of robbery in the second degree, you will return a verdict finding him guilty of robbery in the second degree.

A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

5. "Rule 28.03 allows a party to object specifically or generally on the record to instructions given by the other party.... Specific objections to given instructions are required in motions for a new trial unless made on the record at the time of trial." *State v. Root,* 820 S.W.2d 682, 687 (Mo.App.1991).

The last paragraph of Instruction No. 5 is handwritten. The rest of the instruction is typed.

Defendant's complaints are directed to paragraph Third and the last paragraph of the instruction. Paragraph Third of the pattern instruction, MAI–CR3d 323.04, states:

> Third, that defendant in doing so (used physical force) (or) (threatened the immediate use of physical force) on or against [*name of person threatened or against whom force was applied*] for the purpose of [*Insert one of the following. Omit brackets and number.*]
>
> [1] (preventing) (overcoming) resistance to the taking of the property,
>
> [2] forcing [*name of person who delivered up the property*] (to deliver up the property) (to [*Describe conduct compelled.*] in aid of the taking),
>
> [3] (preventing) (overcoming) resistance to the keeping of the property immediately after the taking,
>
> . . .

Paragraph 4 of Notes on Use to MAI–CR3d 323.04 instructs the drafter to use only one of the suggested options in paragraph Third in a particular instruction. The handwritten final paragraph in Instruction No. 5 does not appear in MAI–CR3d 323.04.

Defendant's argument with respect to Point II is:

> Jury Instruction 5 did not use any of the options required by Notes on Use 4. Instruction 5, paragraph Third stated that [defendant] was guilty if he used physical force for the purpose of stealing. The instruction then defined stealing in handwritten form at the end of the instruction. The instruction should have stated that [defendant] used force for one of the three reasons listed. Because the instruction did not follow MAI and thus did not set forth all the essential elements of the crime, the state's burden was lessened. The jury was not required to find why [defendant] may have used force against Smithson. Therefore, this Court should reverse [defendant's] conviction for robbery in the second

degree and remand the cause for a new trial.

■■■ Failure to give an MAI–CR instruction where appropriate is error and failure to follow an accompanying Note on Use is error. *State v. Ward*, 588 S.W.2d 728, 731 (Mo.App.1979); Rule 28.02(f). However, the prejudicial effect of such error must be judicially determined. *Id.* The standard of review utilized in considering an alleged instruction error that has not been preserved for purposes of appeal is plain error. *State v. Phillips*, 583 S.W.2d 526, 530 (Mo.1979). To be plain error, the effect of the giving of the instruction must go beyond a demonstration of mere prejudice; it must have caused manifest injustice or a miscarriage of justice. *State v. Root*, 820 S.W.2d 682, 688 (Mo.App. 1991).

■■■ The offense with which defendant was charged in Count I, the charge to which Instruction No. 5 applied, was robbery in the second degree. "A person commits the crime of robbery in the second degree when he forcibly steals property." § 569.030.1. Instruction No. 5 instructed the jury it was to find defendant guilty of robbery in the second degree if it found he took money that was the property of the victim and did so using physical force or by threatening immediate use of physical force on or against the victim "for the purpose of stealing." The instruction told the jury that stealing occurred when a person "appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion."

The language in Instruction No. 5 did not follow the language of MAI–CR3d 323.04 and its Notes on Use, paragraph 4. The giving of the instruction was, therefore, error. Nevertheless, the meaning of Instruction No. 5 was consistent with the content of the pattern instruction and the statute that establishes the offense of robbery in the second degree, § 569.030.1. The evidence supported the finding that defendant and his accomplice used or threatened to use physical force on the victim to prevent him from resisting the taking of his property from his residence; or, as stated in the instruction, that the intruders "used physical force or threatened the imme-

diate use of physical force on or against [the victim] for the purpose of stealing."

No manifest injustice or miscarriage of justice occurred. The giving of Instruction No. 5 was not plain error. Point II is denied.

### No. 20913

Point III is directed to the motion court's denial of defendant's Rule 29.15 motion. It alleges the motion court's findings of fact and conclusions of law do not address defendant's allegations that his trial counsel was ineffective in failing to remove one juror for cause, failing to strike another peremptorily and failing to "object to the removal and handling of the jury at the end of the first day of trial" during the time defendant was removed from the courtroom; that the findings of fact and conclusions of law do not comply with Rule 29.15(i).

Defendant's amended motion pointed to responses of one juror, Pat Higginbotham, to questions asked on voir dire concerning whether a defendant in a criminal case should testify at trial. The amended motion contended that defendant's trial counsel "was ineffective in that he failed to move to strike for cause venire person Pat Higginbotham, or in the alternative to use one of [defendant's] peremptory challenges to exclude her from the panel."

The amended motion also alleged defendant's trial counsel "was ineffective in agreeing to allow the jury to be taken into the side hallway or back room while the defendant was being removed from the courtroom by Department of Corrections on the first day of the trial." It alleged, "Counsel was also ineffective in failing to object to the [trial] Court's comments to the jury that they would be taken out of the courtroom for 10 minutes and then they could leave, but that the Court could not tell them why right now."

Point III identifies juror Fast as the juror defendant asserts his trial counsel should have removed peremptorily. There is no reference to juror Fast by name or otherwise in defendant's pro se motion or the amended motion. The assertion that failure to remove the juror was preserved as a grounds for

seeking relief under Rule 29.15 is based on the following dialogue at the start of the evidentiary hearing on the Rule 29.15 motion. The attorney who represented defendant in that proceeding told the trial court:

> I would like to move to amend the amended motion and add one claim that will require no evidence. It's simply a records claim. And I did not have a chance to discuss this with [the prosecuting attorney]. It would include an ineffective assistance of counsel claim for not striking venire member Fast, as on page 81 of the transcript he talks about being charged with pointing a gun at a trespasser and then that—that—having that dismissed.

Defendant's attorney claimed that Mr. Fast, as a result of the experience described, "would show a lot more sympathy for the robbery victim who was also in—who ran into the robbery—or the robbers during the case." The motion court allowed the amendment.

██ The motion court's findings of fact and conclusions of law do not address defendant's allegations of ineffective assistance of counsel with respect to his trial counsel's failure to attempt to remove juror Higginbotham or his failure to remove juror Fast. Neither do the findings of fact and conclusions of law address the circumstances involving defendant's trial counsel's conduct at the time the jury was taken from the courtroom during the first day of trial when defendant was to be removed by personnel from the Department of Corrections.

██ Rule 29.15(i) requires a motion court to make written findings of fact and conclusions of law on all issues presented. A motion court's findings and conclusions must be specific enough to permit meaningful appellate review. *State v. Parker,* 886 S.W.2d 908, 932 (Mo. banc 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995).

The state argues that certain "generalized findings" of the motion court are sufficient to permit this court to review the issues in question. These generalized findings include a statement that defendant failed to produce evidence "to the matters raised in the pending motions" from which the motion court

could conclude defendant's constitutional rights were violated and that he was prejudiced. They include an all-inclusive conclusion, "[Defendant] was not denied his right to effective assistance of counsel nor was [defendant] denied his right to due process of law and a fair trial as guaranteed to [defendant] under the United States Constitution and the Constitution of the State of Missouri."

The state suggests one other "generalized finding" as being sufficient to enable appellate review:

Record did not support defendant's contention on motion for postconviction relief that he received ineffective assistance of trial counsel; record showed that defendant received effective representation from experienced and competent criminal defense attorney, and matters defendant complained of primarily involved trial strategy.

The motion court's "generalized findings" do not address whether defendant's trial counsel's performance in not striking juror Higginbotham for cause was deficient performance. They do not address whether defendant's trial counsel's action (or inaction) regarding the handling of the jury when defendant was removed from the courtroom the first day of his trial amounted to ineffective representation. The motion court's findings and conclusions provide nothing for review with respect to those questions. Point III is granted with respect to those issues.

The appeal from the motion court's denial of defendant's Rule 29.15 motion must be reversed and the case remanded for the motion court to make findings and conclusions as required by Rule 29.15(i) as to the issues concerning defendant's trial counsel's conduct with respect to juror Higginbotham and what transpired at the end of the first day of trial concerning the handling of the jury and defendant's removal from the courtroom.

Defendant's complaint that no findings were made with respect to the issue he attempted to raise by "oral amendment" the morning of the evidentiary hearing on his Rule 29.15 motion is without merit. Disregarding the question of whether an oral amendment to a Rule 29.15 motion would ever be proper, an issue this court need not address, no amendment was made with respect to juror Fast within the time permitted by Rule 29.15(f).

Point III is granted with respect to the issues raised concerning juror Higginbotham and the issue concerning defendant's removal from the courtroom the first day of the criminal trial. Point III is denied as to the issue regarding juror Fast.

The judgment of conviction in No. 20008 is affirmed. No. 20913 is reversed and remanded. The motion court is directed to enter written findings of facts and conclusions of law as to the issues identified in this opinion's discussion of Point III within 30 days of issuance of this court's mandate.

MONTGOMERY, C.J., and CROW, P.J., concur.