STATE of Missouri, Plaintiff–
Respondent,

v.

Gary L. SAUCY, Defendant–Appellant.

No. 26314.

Missouri Court of Appeals,
Southern District,
Division One.

March 14, 2005.

Petition to Rehearing and Transfer
Denied April 5, 2005.

Kent Denzel, Assistant Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Leslie E. McNamara, Assistant Attorney General, Jefferson City, MO, for respondent.

JAMES K. PREWITT, Judge.

On September 10, 2002, Gary L. Saucy ("Defendant") was charged with separate offenses under two counts of robbery in the first degree, pursuant to § 569.020, RSMo 2000. The amended information also charged that Defendant was a prior and persistent offender. The two charges were joined, to which Defendant objected and filed a motion to sever which was denied by the trial court.

Under Count I, Defendant was charged with forcibly stealing money by threatening the immediate use of a dangerous instrument against an employee at a Dollar General store. Count II charged Defendant with forcibly stealing money by threatening the immediate use of a dangerous instrument against an employee at B.J.'s Liquor store. Following a jury trial, Defendant was convicted on Count II, and a mistrial was declared as to Count I. Defendant was sentenced as a prior and persistent offender on June 8, 2004, to a term of seventeen years' imprisonment. Defendant appeals his conviction under Count II.

The charges for which Defendant was tried stemmed from two separate robberies in Joplin, occurring six days apart in July of 2001. At some time in the afternoon of July 6, 2001, an African–American male held a box knife to the neck of an employee at the Dollar General store and demanded that the employee surrender money. The employee was on his way to the back of the store to count his cash drawer when a man stopped him to inquire about air fresheners. The man followed the employee to the back of the store until the employee reached the stockroom and then told the employee "that this was a robbery and that he wanted all [of the] cash." When the employee failed to respond, the man told him he wasn't joking and pulled out a box knife. The employee

was cut on the chin as the man held the box knife to his neck. An assistant manager was also in the area of the stockroom, and the employee and assistant manager were ordered to lay face-down on the floor as the robber left the store on foot with approximately $400.00 taken from the cash drawer. Coins and checks from the drawer were not taken. The employee could not identify the robber, although a third employee identified someone other than Defendant as the man who stole the money. The individual whom the employee identified was later determined to have been in custody at the time of the robbery.

On July 12, 2001, an alleged robbery occurred at B.J.'s Liquor store around 9:00 p.m. There, an African–American male purchased two cigars and, after receiving change, pulled out an object covered with a white cloth and told the clerk to give him the money. The clerk opened the cash register and then was told to lay face-down on the floor and surrender his wallet. The clerk complied; however, the robber did not take the clerk's wallet, but he left the store with approximately $247.00 from the cash drawer. After the robber left through the front door of the store, the clerk saw him running west. A surveillance camera recorded the robbery, and the police obtained still photos of the perpetrator which were later shown on television.

From the television broadcasts of the photos of the suspect, the police received tips implicating Defendant. A woman with whom Defendant was living at the time of the July 12th robbery viewed the videotape and identified Defendant as the robber. When the police located Defendant on July 21, 2001, he was placed under arrest. A box knife was found in Defendant's possession when police searched him. Using Defendant's mug shot, the police developed a photo lineup which they showed to witnesses of the two robberies. The clerk from B.J.'s Liquor identified Defendant from the photo lineup police showed him.

On March 29, 2004, Defendant's jury trial was held. Defendant was convicted on Count II, but the jury did not return a verdict on Count I, and the trial court declared a mistrial as to Count I. The State subsequently filed its *nolle prosequi.* Defendant was sentenced on June 4, 2004, to commitment to the Department of Corrections for a term of seventeen years. Defendant appeals.

 Under his first point, Defendant challenges the sufficiency of evidence presented to establish that Defendant displayed a deadly weapon while robbing the clerk at B.J.'s Liquor. In deciding whether evidence at trial supports the conviction, "this court determines whether there was sufficient evidence from which a reasonable juror might have found defendant guilty beyond a reasonable doubt." *State v. Woodson,* 140 S.W.3d 621, 627 (Mo.App. 2004). We afford "great deference" to the fact finder. *Id.* at 628.

Defendant contends that there was no other evidence that a weapon was displayed beyond the clerk's testimony that he " 'guessed' the robber pulled a gun[,]" which was "nothing more than speculation, and as such it is not sufficient to sustain the verdict." Defendant requests that this court reverse his conviction under Count II and remand for re-sentencing for second-degree robbery.

In support of his position, Defendant asserts that the witness "never said that he opened the cash register because he thought [Defendant] had a gun. He never even said he was afraid [Defendant] *might* have a gun[,]" and that the robber never claimed to have a gun or a dangerous instrument. Defendant further contends

that had the State "presented any evidence of that nature, it might be entitled to an inference that the object in the white cloth appeared to be a gun or dangerous instrument. But because it did not, its case failed as to that element."

Jeff Beyer, the clerk at B.J.'s Liquor, testified that as he was stocking the cooler on the night of July 12, 2001, a man came in and asked for a cigar. The man paid with the exact change and then asked for another cigar. For the second purchase, Beyer had to walk behind the counter to get change from the cash register, and when he gave the man his change, "[t]hat's when he pulled out, I guess a gun, I don't know." Further testimony is set forth below:

Q. Okay. Why is it that you don't know if it was a gun or not?

A. It was covered up with a white cloth.

Q. You couldn't actually see what it was?

A. No.

Q. Did he tell you what it was?

A. No.

Q. Did he say anything to you at the point that he's got thing [sic] in a white cloth pointed at you?

A. Just telling me to give him, you know, give him the money.

Q. And what did you do then?

A. I just kind of, you know, froze for a minute. But then he said—said open the, you know, and that's when he walked around behind the register.

Q. Okay?

A. Or behind the counter.

Q. Okay. And what did he tell you or what did he do when he came around behind the counter?

A. He had me open the register.

At Defendant's trial, the State had the burden of proving each and every element of robbery in the first degree, *State v. Talkington*, 858 S.W.2d 802, 804 (Mo.App. 1993), pursuant to § 569.020, RSMo., which provides, in pertinent part:

1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

■ "The distinctive element of robbery in the first degree is the taking of the property of another by violence or by putting the victim in fear." *State v. Day*, 560 S.W.2d 322, 323 (Mo.App.1977). Here, the State charged Defendant with violation of subparagraph (3), contending that "[D]efendant threatened the immediate us[e] of a dangerous instrument[.]"

■ "Fear of immediate injury, . . . need not be expressly shown" (*Day*, 560 S.W.2d at 323) or stated by the victim (*State v. Collins*, 567 S.W.2d 144, 146 (Mo. App.1978)). A presumption of fear will arise from evidence showing some reasonable grounds therefor. *Day*, 560 S.W.2d at 323; *Collins*, 567 S.W.2d at 146. Compliance with the demands of the robber is indicative of the victim's fear of the consequences which could have resulted had he or she not complied. *Id.* Further, in instances where the robber falsely pretends to be pointing a gun, "[t]he fact that defendant may not have had a gun does not

prevent a conviction." *Id.* at 146. Point I is denied.

In Point II, Defendant assigns error to the trial court's denial of his "motion to dismiss the two counts of robbery for improper joinder[.]" Defendant asserts "that the counts were improperly joined because the two alleged robberies were not part of the same transaction, a common scheme or plan, or sufficiently of the same [or] similar character[,]" and have no connection. As to any determination of prejudice to the Defendant, he contends "that the evidence of each of the two incidents would have been inadmissible propensity evidence in a trial of the other, had they been tried separately.... Therefore, evidence of the Dollar General robbery violated [Defendant's] right, *in his trial for robbing BJ's Liquor,* to be tried only for that offense."

Docket sheets reflect that on December 16, 2003, the trial court denied Defendant's motion to sever Counts I and II. On March 4, 2004, Defendant filed a "Motion to Reconsider the Motion to Sever and for a Ruling on the Motion to Dismiss Improperly Joined Counts." The trial court denied the same on March 9, 2004. Prior to the trial, Defendant renewed his motion and objected to the trial proceeding on both counts. The trial court overruled the objection.

"Appellate review of a claim for failure to sever charges involves a two-step analysis." *State v. Kelly,* 956 S.W.2d 922, 925 (Mo.App.1997). First is a determination of whether the initial joinder of the offenses was proper; and, second, upon a determination that the joinder was proper, this "court must then determine whether the trial court abused its discretion in refusing to sever the offenses." *Id.* Where offenses are improperly joined, "prejudice is presumed from a joint trial and the trial court erred in overruling the motion for severance." *State v. Bechhold,* 65 S.W.3d 591, 594 (Mo.App.2002). In determining whether there has been a misjoinder of offenses, only the State's evidence is considered. *Id.* at 595.

Whether joinder is proper or improper is a question of law, "while severance is within the trial court's discretion." *State v. Tripp,* 939 S.W.2d 513, 517 (Mo. App.1997). "Joinder addresses the more basic question of what crimes can be charged in a single proceeding, while severance presupposes proper joinder and leaves to the trial court's discretion the determination of whether prejudice may or would result if charges properly joined were tried together." *Id.* at 517–18.

Rule 23.05 and § 545.140.2, RSMo.2000 govern joinder.

> Multiple offenses may be joined in the same information or indictment if they are of the same or similar character or if they are based on two or more acts that are part of the same transaction or are part of two or more acts or transactions that are connected or constitute parts of a common scheme or plan.

*Kelly,* 956 S.W.2d at 925.

The State contends that joinder was proper "because all of the alleged crimes were of a same or similar character." To support this contention, the State cites the similarity of the offenses charged; that there was a lone robber who threatened the immediate use of a dangerous instrument against a store cashier; that the perpetrator approached "with a seemingly innocent purpose," demanded money, and instructed the victims to lie on the floor; and that the robberies occurred "less than two weeks apart."

The use of similar tactics in the commission of multiple crimes is sufficient to show that the offenses are of the

same or similar character. *Tripp*, 939 S.W.2d at 518. Those tactics need only resemble or correspond with one another, and they do not need to be identical. *Id.* The manner in which the crimes were committed should be so similar that it is likely that the same person committed all the charged offenses. *Id.* However, identical tactics are not required for proper joinder, and liberal joinder is favored in the interest of judicial economy. *State v. Vinson*, 833 S.W.2d 399, 404 (Mo.App. 1992).

Here, the circumstances were not so similar that it is likely that the same person committed both crimes. The evidence did not reflect that the same weapon was necessarily used, nor was there anything distinctive about the manner of committing the crimes. We cannot say that the tactics employed in each robbery were comparable. Other than the fact that in both robberies the perpetrator stole cash and was described as an African–American male, we can find no connection.

■■■■ "To join offenses which are not part of a common scheme or plan exposes a defendant to prejudice by allowing proof of the commission of unrelated crimes." *State v. Brown*, 954 S.W.2d 396, 398 (Mo. App.1997). To determine that the evidence of the other crimes did not prejudice the defendant, this court must find beyond doubt that the tainted evidence did not affect the jury in its fact-finding process. *Id.* Here, similar to *Brown*, Defendant was convicted on only one count. In *Brown*, the State argued that no prejudice resulted because by finding him guilty on two counts and their inability to decide on two other counts established that the jury was able to distinguish the evidence between each offense. On appeal, however, the Eastern District noted that "[a]n appellate court has no way of knowing, and should not speculate about, the extent to which the evidence entered into the jury's deci-

sion-making process[,]" and "[w]e cannot decide whether Defendant was prejudiced by evidence considered by the jury in Counts II and III without speculating." *Id.*, at 398.

We find that joinder of the two offenses was improper in this case, thus, "prejudice is presumed and severance is mandated." *Kelly*, 956 S.W.2d at 926. Point II has merit, and the judgment is reversed and a new trial granted on Count II.

■■■ In his final point, Defendant claims an abuse of discretion in the trial court's denial of his motion in limine and objections at trial wherein Defendant challenged the admissibility of identification testimony elicited from Sherry Counts, a witness for the prosecution. Defendant contends that the trial court erred in allowing Ms. Counts to express a lay opinion when she identified Defendant as the robber from the surveillance video from B.J.'s Liquor store, and thus "invaded the province of the jury." This contention is reviewed, as it may arise on retrial.

■■■ The trial court has wide discretion in admitting the testimony of a lay witness into evidence, and this court will not reverse the trial court's ruling unless it constitutes an abuse of discretion. *State v. Winston*, 959 S.W.2d 874, 877 (Mo.App. 1997).

■■■ "Generally, opinion testimony is inadmissible when the trier of fact is as capable as the witness to draw conclusions from the facts provided." *State v. Gardner*, 955 S.W.2d 819, 823 (Mo.App.1997). However, "[c]ourts have created an exception to the opinion rule by allowing lay witnesses to testify as to their opinion if the lay witness is in possession of knowledge that the jury does not also possess since it would be helpful to the jury in determining an issue in dispute." *Winston*, 959 S.W.2d at 877. "Thus, in the identification context, a lay witness' opin-

ion testimony is admissible if there is a basis for concluding that the witness is more likely to correctly identify the defendant than is the jury." *Id.* at 877–78.

In this case, Sherry Counts and Defendant were living together around the time of the July 12 robbery, and she would probably have been familiar with his appearance on that date. At trial, there was testimony from witnesses that Defendant's appearance had changed since the time of the robberies, in that at trial Defendant had no hair at all, he was heavier, and he wore glasses, unlike his appearance in the videotape. On this basis, we find that the witness was more likely to correctly identify Defendant in the videotape than was the jury, thus the trial court did not abuse its discretion in allowing her to identify Defendant. Point III is denied.

The judgment is reversed and the case remanded for a new trial on Count II.

GARRISON, P.J., and RAHMEYER, J., concur.