**STATE of Missouri, Respondent,**

**v.**

**Arnold TOBIAS, Appellant.**

**No. 63161.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 5, 1994.

---

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant, Arnold Tobias, was convicted of one count of kidnapping, three counts of forcible sodomy, two counts of forcible rape, one count of first-degree burglary, three counts of first-degree robbery, two counts of second-degree robbery, and one count of stealing a motor vehicle. Defendant was sentenced to serve eight consecutive life sentences plus 45 years.

The evidence presented at trial, viewed in the light most favorable to the verdict, is as follows. At 1:30 a.m. on August 23, 1990, Thomas Gibbons and K.S. returned to his residence in the Central West End in St. Louis. As they reached the first floor landing of Gibbons' apartment building, defendant approached, waving a small silver gun. Defendant then demanded and took cash and jewelry from the couple. He took K.S.'s car keys, announced they were going for a ride, and told Gibbons to lie facedown on the ground and remain in the building. Defendant grabbed K.S., led her to the car, put her in the driver's seat, and sat in the front passenger seat holding the gun in his lap.

Defendant ordered K.S. to drive near St. Louis University's campus and eventually directed her to stop in an alley. Defendant took $25 from the glove compartment and raped and sodomized K.S. After he ordered her to exit the alley, defendant got out of the car and let K.S. drive away. K.S. drove to a police station and reported the incident. The police took her to Barnes Hospital where doctors examined her and determined she had been sexually assaulted. At a lineup on November 8, 1990, K.S. identified defendant as her assailant. Later, Gibbons also identified defendant in a photographic lineup.

J.I. lived in the Central West End with her mother. On August 27, 1990, at 10:30 a.m., J.I. was home alone when defendant rang the doorbell. She answered the door, and defendant told her that her father had been in an accident in the vicinity. J.I. opened the door to look up the street, and defendant displayed a small silver gun, ordered her to open the door, and forced her to go upstairs. Defendant took some jewelry, led J.I. into a bedroom, made her lie facedown on the bed, and bound her arms behind her back. Defendant left, ordering J.I. to remain still until he was gone. J.I. then went downstairs to her cousin's apartment, and her cousin called the police.

At 8:15 a.m. on October 22, 1990, Y.H. was alone in her home in the Central West End. She went to the basement to check her iron, opened the door, and saw defendant standing in the basement. Defendant displayed a screwdriver and told her, "Just be quiet, otherwise I'll kill you." Defendant pushed Y.H. to the floor, searched her school bag, and took $5.

Defendant took Y.H. upstairs, tied her wrists and ankles, and forced her to lie facedown on the floor. Defendant searched the entire house and took some jewelry, a Japanese sword, Japanese coins, and Y.H.'s wedding ring. Defendant then removed his pants and Y.H.'s pants and attempted to rape her. He fondled her and forced her to perform oral sex. Defendant took her car keys and left in her car. Y.H. called her husband who then called the police.

On October 23, 1990, the police recovered Y.H.'s vehicle, which was occupied by defen-

dant's brother, Anthony, and Anthony's wife, Andria. On the same day, the police obtained a search warrant for defendant's residence and recovered Japanese coins from his bedroom while executing the warrant. At a lineup on November 8, 1990, Y.H. could not identify defendant as her assailant. However, while she waited at the police station, an officer walked through the waiting room carrying a leather jacket which had been seized from defendant during his arrest. Y.H. recognized it as the same jacket her assailant had worn.

D.R. lived in the Central West End with her sister, her father, and her father's girlfriend. At 5:00 a.m. on October 30, 1990, defendant entered her bedroom, motioning and telling her to be quiet.

Defendant demanded money and jewelry from D.R. and took two of her rings. He removed her clothes and sodomized and raped her. Defendant continued to ask for money and jewelry and eventually took three traveler's checks. Defendant tied D.R.'s feet and hands, took more jewelry, and searched her closet. Defendant then took D.R.'s spare car key and left in her car.

D.R. called the police. After she gave police a description of defendant, D.R. went to Jewish Hospital where doctors examined her. D.R.'s neighbor also called the police to report that in the early morning she heard car gears grinding, looked out the window and saw D.R.'s car speeding down the street. Later, D.R. viewed a lineup and identified defendant as her assailant.

Defendant was arrested at 4:30 p.m. on November 8, 1990, at his nephew's home. At trial, he presented alibi evidence and a theory that some of the victims misidentified him as their assailants.

On April 11, 1991, an indictment was filed, charging defendant with 15 criminal offenses. After a hearing, the trial court severed one offense, an unrelated purse snatching, but denied the remainder of defendant's motion to sever the offenses. The case went to trial on October 19, 1992. At the close of evidence, the trial court granted defendant's motion for judgment of acquittal regarding one offense, a charge of feloniously restrain-

ing J.I. Defendant was convicted on the remaining thirteen counts. On appeal, defendant raises eight points of error.

## I. Severance

In his first point, defendant contends the trial court erred in refusing to sever for trial the offenses relating to each victim. This contention requires a two-step analysis. First, we must determine whether the offenses were properly joined in the indictment. *State v. Forister,* 823 S.W.2d 504, 508 (Mo.App.1992); *State v. Hughes,* 787 S.W.2d 802, 804 (Mo.App.1990). Then, if joinder was proper, we must determine whether the trial court abused its discretion in refusing to sever the offenses. *Id.* Joinder is either proper or improper under the law, but severance is within the trial court's discretion. *Forister,* 823 S.W.2d at 508–509.

■ Two or more offenses may be joined in one indictment if the offenses are of the "same or similar character" or based on the "same act or transaction" or on two or more acts that are "connected together" or constitute a "common scheme or plan." § 545.-140.2 RSMo.1986; Rule 23.05. To achieve judicial economy, liberal joinder of criminal charges is favored. *State v. Davis,* 825 S.W.2d 948, 953 (Mo.App.1992). Similar tactics are sufficient to qualify as acts of the same or similar character. However, identical tactics are not required. *State v. Olds,* 831 S.W.2d 713, 719 (Mo.App.1992).

On appeal, defendant has not raised a challenge to the joinder of the offenses. While they were not identical, we find the offenses were sufficiently similar in time, manner and geographic location to permit joinder.

■ The next question is whether the trial court abused its discretion in denying defendant's motion to sever the offenses. A motion to sever is governed by § 545.885 RSMo.Supp.1993 and Rule 24.07. If it appears that a defendant is prejudiced by the joinder of offenses, a court may grant severance upon a *particularized showing of substantial prejudice.* § 545.885.2 RSMo.Supp. 1993; Rule 24.07(b). A denial of severance will not be reversed absent an abuse of dis-

cretion and a clear showing of prejudice. *Olds,* 831 S.W.2d at 719.

The recent decision of the Missouri Supreme Court in *State v. Conley,* 873 S.W.2d 233 (Mo. banc 1994) provides us with guidance in reviewing the trial court's exercise of discretion in denying a defendant's motion for separate trial of multiple offenses.

"A relevant factor in the determination of prejudice is whether evidence of separate crimes would have been inadmissible propensity evidence had the two crimes not been joined. However, even where the evidence would not be admissible if the charges are tried separately, any prejudice may be overcome where the evidence with regard to each crime is sufficiently simple and distinct to mitigate the risks of joinder." *Conley,* at 238.

Here, the evidence regarding each crime was simple and distinct. Therefore, in accord with the Supreme Court's latest controlling decision, we find the possible prejudice that jurors might resolve a doubt concerning defendant's guilt of one crime because of evidence he committed another crime is overcome by simplicity and distinctness. Point denied.

## II. Batson Challenge

Defendant next argues the trial court erred in overruling his challenge, under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the State's peremptory challenge of a black venirewoman. The record shows the assistant circuit attorney stated race-neutral reasons for striking the venirewoman. Defendant's attorney attempted to show these reasons were pretextual by pointing to what she described as "similarly situated" white venirepersons. The trial court rejected this argument and accepted the reasons stated by the assistant circuit attorney. We find no abuse of trial court discretion. The white venirepersons were not within the scope of the reasons given for striking the black venirewoman. The trial court's determination was not clearly erroneous. *See State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). Point denied.

### III.  Burden of Proof Instruction

Defendant contends the trial court plainly erred in giving Instruction # 4, MAI–CR3d 302.04, defining the burden of proof.  Our Supreme Court has consistently rejected identical attacks on this instruction.  *State v. Ervin*, 835 S.W.2d 905, 924 (Mo. banc 1992); *State v. Blankenship*, 830 S.W.2d 1, 13 (Mo. banc 1992);  Point denied.

### IV.  Defendant's Motion to Suppress Evidence [1]

Defendant argues the trial court erred in overruling his motion to suppress the State's introduction of a jacket which the police seized during defendant's arrest and a photograph of the Japanese coins which the police seized while executing a search warrant of his residence.

At the hearing on the motion, a police officer who obtained and executed the search warrant testified.  Defendant offered no evidence.  The trial court found no violation of defendant's fourth amendment rights.  Our review of the evidence supports this conclusion.

■ Moreover, defendant has failed to include a copy of his motion to suppress in the legal file.  It is an appellant's duty to make a record on appeal which includes all the evidence and proceedings necessary for a determination of the questions presented.  Rule 30.04(a); *State v. Sumowski*, 794 S.W.2d 643, 646 (Mo. banc 1990).  In the absence of a record showing the grounds of defendant's motion, we are obligated to affirm the trial court.  *See State v. Naucke*, 829 S.W.2d 445, 460 (Mo. banc 1992).  Point denied.

### V.  Hearsay Evidence

In his next point, defendant claims the trial court erred in permitting the State to elicit hearsay testimony from a witness.  Defendant argues the court first erred in overruling his objections to the testimony and later erred after sustaining defendant's objection by failing to instruct the jury to disregard the testimony.

■ The transcript indicates, however, that the court sustained each objection to the hearsay testimony.  Also, defendant did not request that the court instruct the jury to disregard the evidence.  "Where defendant's objections to questions are sustained and there is no further objection or motion directed to the court, nothing is preserved for review on appeal."  *State v. Harvey*, 766 S.W.2d 175, 177 (Mo.App.1989).  The relief defendant sought was granted.  Point denied.

### VI.  Improper Interjection and Prosecutorial Misconduct

Defendant contends the trial court erred by interjecting itself into the trial in a manner prejudicial to defendant.  He further claims the State erred and engaged in misconduct by eliciting prejudicial testimony and misstating the evidence during the examination of a witness and by referring to facts not in evidence during its closing argument.  We have examined the record and find no support for this argument.

### VII.  Evidence Suppression

■ In his next point, defendant claims the trial court erred by permitting the State to deliberately suppress exculpatory evidence.  Specifically, defendant claims the State suppressed the contents of the rape kit examinations of D.R. and K.S. which prevented defendant from testing the samples to discover exculpatory evidence.  Defendant also claims the State suppressed an interdepartment police memorandum which would have aided defendant's cross-examination of D.R. by supporting his theory that D.R. misidentified defendant as her assailant.  Finally, defendant argues the State failed to furnish defendant with a complete copy of K.S.'s medical records by suppressing evidence that she had sexual intercourse with her boyfriend the day before she was attacked.

We do not need to address defendant's claims regarding the memorandum and K.S.'s medical records.  Defendant made no

---

**1.**  Points IV through VIII consist of defendant's pro se arguments included by counsel in appellant's brief.

objection at trial upon learning of the evidence nor did he raise these issues in his new trial motion. Therefore, these issues were not preserved for our review.

Defendant also failed to preserve for our review his claim regarding the rape kits. Defendant never requested to test the samples from the kits, he raised no objection to the introduction of the State's evidence regarding the kits, and he failed to raise the issue in his motion for a new trial. Our review, therefore, is limited to plain error. We must determine whether the alleged suppression resulted in manifest injustice or a miscarriage of justice. Rule 30.20; *State v. Childers*, 801 S.W.2d 442, 444 (Mo.App.1990).

Defendant argues, under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the State has an affirmative duty to disclose to the defendant any exculpatory evidence it discovers. We do not dispute this proposition. However, in the present case, the State never discovered any exculpatory evidence in the tests it conducted on samples from the rape kits. The State's expert witness testified that the results of these tests indicated defendant could have attacked both women. Point denied.

### VIII. Cross–Examination Limitation

In his final point, defendant argues the trial court erred in limiting defendant's right to cross-examine K.S.. It appears defendant's contention concerns the trial court's decision not to hold a separate hearing on defendant's motion to suppress the victims' out-of-court identifications of defendant. Defendant argues that this ruling, coupled with his inability to point out discrepancies between K.S.'s deposition testimony and the testimony she gave at trial, restricted him from presenting a theory to the jury that K.S. misidentified defendant as her attacker.

The court clearly provided that defendant could cross-examine every victim regarding their identification testimony. The court ruled that a separate hearing would only subject the victims to unnecessary, repetitive questioning regarding the sexual attacks. This decision in no way limited defendant's right to cross-examine K.S.

Furthermore, defendant never attempted to impeach K.S.'s testimony with her deposition testimony. No error can arise where there was no attempt to admit the testimony of which defendant now complains. *See Lewis v. State*, 806 S.W.2d 89, 92 (Mo. App.1991). Point denied.

Defendant additionally claims the trial court erred in overruling his motion to suppress Thomas Gibbons' identification of defendant in a photographic lineup. Defendant argues the identification was the product of a suggestive identification procedure. He offers no factual basis for this assertion. Our review of the record reveals that the identification procedure was not suggestive. Point denied.

The trial court's judgment is affirmed.

GRIMM, P.J., and AHRENS, J., concur.