**STATE of Missouri, Respondent,**

v.

**Ray E. KELLY, Appellant.**

**No. WD 52869.**

Missouri Court of Appeals, Western District.

Nov. 4, 1997.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Ray E. Kelly appeals his convictions of four counts of first degree robbery and four counts of armed criminal action. Mr. Kelly argues that the trial court abused its discretion in overruling his motion to sever one count of first degree robbery and one count of armed criminal action from the remaining six counts. We agree, and remand for severance and new trials on all counts.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Viewed in the light most favorable to the verdicts, the evidence showed the following. On July 21, 1995, Kevin Peoples and Bill Adkins, cable repairmen for Southwestern

Bell, were working on 41st Street in Kansas City, Missouri. Around 1:30 that afternoon, Mr. Peoples saw two men approach Mr. Adkins and ask what he was doing. After talking to Mr. Adkins, the men then headed back up the street, and Mr. Peoples lost sight of them. As Mr. Peoples walked around his truck to get some supplies, a man with a gun confronted him and demanded his wallet. Mr. Peoples later identified the man as the appellant, Ray E. Kelly. Mr. Peoples threw his billfold at Mr. Kelly's feet. Mr. Kelly then told Mr. Peoples that he had better run because he was going to shoot him. Mr. Peoples ran to Mr. Adkins' truck, and they drove back to the garage and called the police. When Mr. Peoples told Mr. Adkins what Mr. Kelly was wearing, they realized that Mr. Kelly was one of the men who had earlier approached Mr. Adkins on the street.

Approximately ten days later, shortly after midnight in the early morning hours of July 31, Bryan Tedlock was out in his father's 1983 red Honda Civic. He and his friend, Dave Parker, drove to an apartment complex looking for a party. Mr. Parker saw Mr. Kelly and another man standing in the parking lot and asked them if they knew where the party was. Mr. Kelly and the other man approached the car on the driver's side. Mr. Kelly pulled out a gun. He told Mr. Parker to get in the back seat and told Mr. Tedlock to move over into the front passenger seat. Mr. Kelly then got behind the wheel, and the other man got in the back seat. After driving around for approximately forty-five minutes, Mr. Kelly stopped the car and everyone got out. Mr. Kelly threatened to shoot either Mr. Tedlock or Mr. Parker and told them to stay away from the car. Mr. Kelly and the other man then got back in the car and drove away.

Several hours later, at approximately 4:15 a.m., Mr. Kelly and another man entered a convenience store at 107th Street and Blue Ridge. Mr. Kelly's face was painted red and blue, and he carried a pistol. The other man wore a white mask and carried a shotgun. Mr. Kelly told the clerk behind the counter to "hit the floor" and made another employee open the register. After the robbers removed the money from the register, they left the store. One of the employees noticed the robbers pull away in a red compact car.

The next day, at approximately 1:00 p.m. on August 1, 1995, Mr. Kelly and another man entered the ½ Price Store at 87th Street and Blue Ridge. They went to the men's department and began quickly taking clothes off of the racks. Mr. Kelly left the store, got in an older model red Honda Civic, and moved it to the front of the building. He then came back inside, picked up the pile of clothes he had left, and both men quickly headed for the door. When they reached the first set of doors, store employees began to converge on the men, and both robbers began running away. A security officer ran to the car in an attempt to lock it in case the men got away and came back for it later. As the officer was opening the car door, Mr. Kelly approached and pointed a gun at her. The other man came up, and the two ran off and went into an apartment complex next to the store.

Witnesses at each of the robberies identified Mr. Kelly as one of the robbers. Police eventually arrested Mr. Kelly on October 23, 1995, based on outstanding warrants. On November 9, 1995, the State filed an information charging Mr. Kelly with one count of first degree robbery and one count of armed criminal action for the robbery at the ½ Price Store. On December 4, 1995, the grand jury returned an indictment charging Mr. Kelly with eight criminal counts. Counts 1 and 2 charged Mr. Kelly with first degree robbery and armed criminal action for robbing Mr. Peoples on July 21, 1995. Counts 3 through 8 charged Mr. Kelly with three counts of first degree robbery and three counts of armed criminal action arising out of events taking place over the course of July 31 to August 1, 1995. On December 15, 1995, the State filed an information in lieu of indictment charging Mr. Kelly with the same offenses. Finally, the State filed a second amended information alleging that Mr. Kelly was a prior offender.

On March 4, 1996, Mr. Kelly filed a motion to sever Counts 3 through 8 from Counts 1

and 2. He argued that Counts 3 through 8 had not been lawfully joined to the first two Counts because they were not of the same or similar character, were not based on the same act or transaction, and were not part of a common scheme or plan. Trial began on March 5, 1996, and the trial judge overruled Mr. Kelly's motion for severance. The jury found Mr. Kelly guilty of all eight counts, and the judge sentenced him to consecutive terms of fifteen years for each of the four counts of first degree robbery. The judge also sentenced Mr. Kelly to terms of ten years for each of the four counts of armed criminal action, to be served concurrently with each other and with the robbery sentences. This appeal followed.

## II. COUNTS 1 AND 2 WERE IMPROPERLY JOINED TO THE REMAINING COUNTS

Mr. Kelly's sole argument on appeal is that the trial court abused its discretion in overruling his motion to sever Counts 1 and 2 from the remaining counts. He claims that the first robbery and the later three robberies were not of the same or similar character, were not based on the same act or transaction, and were not part of a common scheme or plan and therefore could not be properly joined. He also argues that he was prejudiced by being tried for the first robbery simultaneously with the later three robberies and that trying them together allowed the State to present evidence that would have been inadmissible in separate trials. Mr. Kelly does not challenge the sufficiency of the evidence.

■ Appellate review of a claim of failure to sever charges involves a two-step analysis. *State v. Kelley,* 901 S.W.2d 193, 202 (Mo.App. 1995); *State v. Tobias,* 873 S.W.2d 650, 653 (Mo.App.1994). First, the court must determine whether the initial joinder of the offenses was proper. *Id.* If the joinder was proper, the court must then determine whether the trial court abused its discretion in refusing to sever the offenses. *Id.*

■ Whether joinder of offenses is proper or improper is a question of law. *State v. Tripp,* 939 S.W.2d 513, 517 (Mo.App. 1997); *Kelley,* 901 S.W.2d at 202. If joinder is found to be improper, prejudice is presumed and severance is mandatory. *State v. Simmons,* 815 S.W.2d 426, 430 (Mo. banc 1991). In determining whether there has been a misjoinder of offenses, only the State's evidence is considered. *State v. Terry,* 928 S.W.2d 879, (Mo.App.1996).

Multiple offenses may be joined in the same information or indictment if they are of the same or similar character or if they are based on two or more acts that are part of the same transaction or are part of two or more acts or transactions that are connected or constitute parts of a common scheme or plan. Rule 23.05; § 545.140.2.[1] Here, the acts of July 21, 1995, and the later crimes are not part of the same transaction or part of a common scheme or plan, nor does the State argue that they are. Instead, the State asserts that the offenses are of the same or similar character.

■ The use of similar tactics in the commission of multiple crimes is sufficient to show that the offenses are of the same or similar character. *Tripp,* 939 S.W.2d at 518; *Tobias,* 873 S.W.2d at 653. Those tactics need only resemble or correspond with one another, and do not need to be identical. *Tripp,* 939 S.W.2d at 518; *State v. Howton,* 890 S.W.2d 740, 744 (Mo.App.1995). However, "the manner in which the crimes were committed should be so similar that it is likely that the same person committed all the charged offenses." *Tripp,* 939 S.W.2d at 518 (quoting *State v. White,* 755 S.W.2d 363, 367 (Mo.App.1988)).

■ Here, the tactics used in the commission of the first robbery are not of the same or similar character as the tactics used in the later three crimes. The first robbery occurred on July 21, 1995, in broad daylight on the street. Mr. Kelly stole a wallet at gunpoint and told Mr. Peoples to run away. The

1. Unless otherwise indicated, all statutory references are to Missouri Revised Statutes 1994.

entire incident lasted only a few minutes at most, and there was no attempt to steal Mr. Peoples' car.

These tactics do not correspond to those used in any of the three later crimes. In the second crime, only after Mr. Parker and Mr. Tedlock asked Mr. Kelly for directions to a party, did Mr. Kelly pull out a gun. He did not simply rob them, but rather drove around with them for forty-five minutes and then stole their car. The third crime was also different from the first one. It involved a robbery of a convenience store. Mr. Kelly disguised his face and took cash. The fourth crime essentially began as shoplifting of merchandise and turned into an armed robbery after store security attempted to stop Mr. Kelly outside.

The only real similarity between the first crime and the later three crimes is that in all four instances Mr. Kelly was accompanied by another man[2] and committed armed robberies. However, there was nothing distinctive about the tactics used which made it likely that the same person was involved in each robbery. If these were sufficiently similar, then so would be any armed robbery committed by two people. In contrast, most cases affirming joinder have involved far more similarity in the manner in which the crimes were committed. *See, e.g., Tripp,* 939 S.W.2d at 518 (robberies were similar in that they all involved residences, robbers kicked in doors, and large amounts of change were taken); *Kelley,* 901 S.W.2d at 202 (crimes were similar in that they were all arson-related offenses involving burning of cars or garages); *State v. Langston,* 889 S.W.2d 93 (Mo.App.1994) (joinder proper where robberies occurred in same area within a week of each other and all involved a robbery, use of a weapon to threaten the female victim, and a sexual attack or attempt at or after the robbery; this was sufficient to put defendant's "signature" on the incidents); *State v. Smith,* 886 S.W.2d 194 (Mo.App.1994) (robberies were similar in that all victims were

women approached from behind while alone in front of their homes, defendant stole their purses, and defendant later contacted the victims after the robberies); *State v. Vinson,* 834 S.W.2d 824 (Mo.App.1992) (robberies were similar in that they both involved service stations, robber went behind cash register, removed entire cash drawer, and left in a waiting vehicle); *State v. Forister,* 823 S.W.2d 504 (Mo.App.1992) (upholding the joinder of robbery of a commercial establishment with two robberies of residences despite the differences in the nature of the places robbed where defendant was always accompanied by the same accomplice (and sometimes others), he always remained in the car, the same car was used in each robbery, and similar unusual language was used in the residential robbery and in the first commercial robbery).

Because the Court finds that joinder was improper, "prejudice is presumed and severance is mandated." *Simmons,* 815 S.W.2d at 430. We therefore reverse and remand for a trial on Counts 1 and 2 separate from Counts 3 through 8.

All concur.

---

2. The State asserts that Mr. Kelly's accomplice in all four of the robberies was the same man and also made this claim in its opening statement.

However, there is no evidence in the record that this is true.