STATE of Missouri,
Plaintiff/Respondent,

v.

Otis SPENCER, Defendant/Appellant.

No. ED 78924.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 4, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for respondent.

Daniel E. Diemer, Kessler & Diemer, LLC, St. Louis, MO, for appellant.

CHARLES B. BLACKMAR, Senior Judge.

The defendant was charged in a two count information. Count I alleged the forcible rape of K.D. on April 19, 1998. Count II charged attempted forcible rape of T.M. on June 25, 1998. The jury found the defendant guilty as charged in Count I and not guilty as to Count II. He was sentenced to 25 years in the Missouri Department of Corrections on Count I, and now appeals from the conviction and sentence. In ruling on the four points asserted for reversal we view the evidence favorable to the judgment, even though there might be contrary evidence in the record. We affirm.

## I.

The defendant first complains that the two offenses were improperly combined in a single information and that the trial court erred in overruling his timely motion for severance.

Section 545.140.2, RSMo (2000) provides in pertinent part as follows:

> Notwithstanding Missouri Supreme Court Rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged ....are of the same or similar character.....

The pertinent part of Supreme Court Rule 23.05 reads as follows:

> All offenses that are of the same or similar character ....may be charged in the same indictment or information in separate counts.

About 10:30 p.m. on April 18, 1998 K.D. walked to the Set'Um Up Saloon in Wentzville. She stayed for about two hours and then undertook to walk home. The defendant accosted her and she gave him a cigarette. He told her that he had some "good shit," and she reprimanded him for making such a statement to a stranger, suggesting that so far as he knew she might be an undercover officer. The jury could determine that he was talking about illegal drugs. After some preliminaries he grabbed the victim, threw her to the ground, and began choking her. She protested and tried to resist. He removed her jeans and grabbed her underwear. She tried to scratch him but he continued

his efforts and raped her, achieving penetration sufficient to establish an essential element of the offense of rape. He fled when a male stranger who witnessed the incident appeared.

On June 25, 1998 T.M. went to the Set'Um Up Saloon to meet girl friends, who did not appear. After about 15 or 20 minutes she left the premises. She heard her boyfriend's vehicle and hid from him, not wanting him to know that the girls had "stood her up." She had walked about 30 feet when the defendant accosted her from behind. She had met the defendant about a month earlier, and told him that she knew who he was. He offered her drugs for sex, which proposition she rejected. He then threw her to the ground, tried to choke her, displayed what she thought was a knife, and grabbed her between the legs, but before he could proceed further she freed herself and ran to the nearest house.

The defendant argues that the offenses are not of the same or similar character, and so were erroneously joined in the same information. He complains, alternatively, that even if the offenses are legally joined their trial together prejudiced him to such an extent that the court erred in overruling his motion to sever.

■ The courts have evolved a two part test in determining questions of joinder of offenses. *See State v. Kelly*, 956 S.W.2d 922, 925 (Mo.App.1997); *State v. Pasteur*, 9 S.W.3d 689, 694–5 (Mo.App.1999). It must first be determined whether the joinder complies with the governing statutes and rules. If the answer to this question is negative, prejudice is presumed and any conviction must be reversed.

■ If the joinder is in compliance with the legal requirements, the court must still determine whether there is such indication of prejudice from cross-contamination of evidence that severance must be granted.

As to severance, under these conditions the trial court is afforded broad discretion.

■ We conclude that the joinder of these two offenses in one indictment does not violate the statute and rule cited above. The use of similar tactics is sufficient to show that the offenses are of the same or similar character. *Pasteur*, 9 S.W.3d at 694; *State v. Hemme*, 969 S.W.2d 865, 869 (Mo.App.1998). In this case both of the victims were adult women who had just left the same barroom and were walking alone. The defendant discussed drug use with both of them and then turned to violence, wrestling and choking the victims before removing clothing and ravishing them. The principal difference was that in the earlier indictment the defendant achieved penetration while in the latter one the victim escaped his clutches.

Recent cases regularly say that, in order to be joined, the manner in which the crimes were committed should be so similar that it is likely that the same person committed all the charged offenses. *Pasteur*, 9 S.W.3d at 694; *Hemme*, 969 S.W.2d at 869; *State v. Hyman*, 37 S.W.3d 384, 393 (Mo.App.2001). There is merit in the state's assertion that this proposition is an overstatement, because the cases go on to assert that "the use of similar or comparable tactics sufficiently establishes that the offenses are of a similar character for the purpose of joinder," which seems to indicate a more permissive standard. *Hyman*, 37 S.W.3d at 393. We conclude that, in any event, the joinder in this case is consistent with the holdings in the cases just cited.

Having determined that the joinder of the two counts was not legally erroneous, we proceed to the question of whether the trial court abused its discretion in overruling the motion to sever. The jury was properly instructed that it must consider

each offense separately. The circumstance that the jury acquitted the defendant on one count probably does not suffice to demonstrate that the joinder was lawful, but is appropriate to consider in determining whether the court abused its discretion in denying the requested severance. We do not sense an abuse of discretion in denying severance.

The defendant cites *State v. Simmons*, 815 S.W.2d 426 (Mo. banc 1991), in which the Supreme Court reversed convictions and death sentences in two somewhat similar, but unrelated, murder charges after finding that they were improperly joined. The state's brief does not favor us with a discussion of this case, but it is distinguishable because homicide cases were then governed by Section 565.004.1 RSMo (1986), providing in pertinent part as follows:

A count charging any offense of homicide may only be charged and tried together with one or more counts of any other homicide when all such offenses . . . . constitute part of a common scheme or plan.

The authority to join homicide offenses "of same or similar character," then, did not exist at the time of Simmons's trial and the *Simmons* case is not on point here.

Improper joinder was found in *State v. Kelly*, 956 S.W.2d 922 (Mo.App.1997), in which four separate charges of armed robbery were joined. The court found that the offenses were unrelated in time and did not involve similar tactics. The report of that case demonstrates substantial differences between it and the other cases cited above, as to the number of offenses and the distinct dissimilarities. The cases we rely on are much closer to this case than is *Kelly*.

Even though we do not reverse because of improper joinder or denial of severance, it is appropriate to caution prosecutors about the dangers of random joinder of offenses. A prosecutor should think carefully about whether to resist a motion for severance. Otherwise there is danger that retrial will be required.

## II.

■ The defendant argues in his second point that his constitutional rights were violated by an illegal "evidence draw" of blood while he was in the emergency room of a hospital. He was in jail on traffic charges when he suffered chest pains indicating a possible heart attack and was taken in an ambulance to a hospital. The hospital attendants found it necessary to take a blood sample for purposes of diagnosis and treatment. A police officer who had followed him to the hospital knew that the defendant had been charged with the attempted rape of T.M. and suspected that he was involved in the somewhat similar rape of K.D., for which offense no charges had then been filed. The officer asked the attending nurse to provide him with a sample of the defendant's blood for possible use as evidence. The defendant executed a consent form and the evidentiary sample was provided. The blood was used for a DNA profile and matched semen and saliva found on the victim's undergarments to a very high degree of probability.

The defendant argues that the sample was obtained by coercion, asserting that he was under such stress and pressure that his signing of the consent form could not be found to be voluntary. The issue he raises is purely factual and we see no reason to substitute our judgment for that of the trial court, which is amply supported by evidence.

## III.

■ The defendant next complains of the admission into evidence of a "rape kit" assembled at the hospital where K.D. was examined after she was raped. This kit contained the underpants she was wearing

at the time she was assaulted, and which had been removed in the course of the rape. She put them in her pocket and turned them over to the nurse who attended her at the hospital. The nurse placed the underpants in the rape kit, which was delivered to the Wentzville Police Department. The garment was removed from the kit by the department's forensic examiner, who cut samples for testing. Some of these samples were forwarded to the laboratory of the Missouri State Highway Patrol, where they were tested for DNA profiling. A picture of the underpants taken while they were in police custody was shown to the victim, who identified them as hers.

The defendant argues that the evidence does not show a proper chain of custody for the underpants while they were in the possession of the police. He also complains that the underpants had been altered while in police custody, which of course is correct because samples were quite properly cut out for purposes of laboratory analysis.

The state points to a lack of explicit objection when the rape kit and the photograph of the garment were offered in evidence. Procedural details are important, because if an objection is based on lack of foundation then the prosecutor would have the ability to patch any holes. The defendant's point is so lacking in substance, however, that we elect to review the merits. The victim identified a photograph of the garment as showing the underpants she delivered to the police department. Where there is such an identification, it is not necessary to point out all persons who had custody of the evidence during the entire time it was under police control. *State v. Dawson,* 985 S.W.2d 941, 953 (Mo. App.1999); *State v. Davenport,* 924 S.W.2d 6, 9 (Mo.App.1996). The situation differs from a case involving a chemical product or controlled substance which could not be definitively identified through visual examination.

Inasmuch as the police properly cut samples out of the garment for testing purposes, its appearance was necessarily modified while in police custody. It was entirely appropriate to ask the victim to identify the garment from a photograph. The accuracy of the depiction and of her identification were for the jury. Defendant's Point III is without merit.

## IV.

In a fourth point the defendant complains about the prosecution's introduction into evidence and playing before the jury of a taped statement victim K.D. made for the Wentzville police department, describing her rape. He claims illegal bolstering, under such holdings as *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987). The point is not well taken. The defense had used a transcript of the tape in attempting to impeach the victim's testimony. The prosecution quite properly offered to play the entire tape, and the court properly permitted this. The victim was available for further cross examination but none was sought.

Improper bolstering occurs only when there is an attempt to replicate a witness's testimony, without other justification, for the sole apparent purpose of letting the jury hear the same evidence twice. It is quite proper to rehabilitate an impeached witness by showing prior statements consistent with trial testimony. The playing of the tape is not shown to be erroneous.

The judgment is affirmed.

WILLIAM H. CRANDALL, JR., P.J. and ROBERT G. DOWD, JR., J., concur.