**STATE of Missouri, Plaintiff–Respondent,**

v.

**Douglas J. BRUMM, Defendant–Appellant.**

No. 26093.

Missouri Court of Appeals, Southern District, Division Two.

May 24, 2005.

N. Scott Rosenblum, Mark W. Lyons, Clayton, MO, for appellant.

Darrell L. Moore, Prosecuting Atty. of Greene County, Reggie L. Breshears, Asst. Prosecuting Atty., Springfield, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Douglas Brumm ("Defendant") was charged by amended felony information with committing the class B felony of assault of a law enforcement officer in the second degree, in violation of § 565.082.[1] After a bench trial, Defendant was found guilty of the lesser-included offense of assault of a law enforcement officer in the third degree, which is a class A misdemeanor. *See* § 565.083; MAI–CR 3d 319.39. Defendant was sentenced to 180 days incarceration. Execution of the sentence was suspended, however, and Defendant was placed on two years probation and ordered to serve seven days of shock probation in the Greene County jail.

Defendant has appealed from the judgment and sentence on the ground that his conviction of third degree assault of a law enforcement officer violates the double jeopardy clause of the Fifth Amendment to the United States Constitution. Defen-dant claims his plea of guilty in another case to a misdemeanor charge of careless and imprudent driving barred his subsequent prosecution on the felony assault charge. We affirm.

### I. Facts and Procedural History

Defendant does not challenge the sufficiency of the evidence to support his conviction. Viewed in a light most favorable to the trial court's judgment, the following facts were adduced at trial.

At around 1:30 a.m. on November 10, 2000, bicycle patrol officer Margaret Krull ("Officer Krull") was standing beside her police patrol bike in front of the Git–N–Go store located at 609 E. Elm in Springfield, Missouri. The parking lot was brightly lit. Officer Krull was wearing a police bicycle uniform. It was "very clear" that she was a police officer because she was wearing a gun belt, a Springfield Police officer patch on her left lapel and each shoulder, a jacket with the word "POLICE" in big white florescent letters on it, and a helmet with the word "POLICE" on it. All of the patches and emblems were designed to be visible at night.

Officer Krull was with two other bicycle patrol officers: Darin Leonard ("Officer Leonard"); and David Vogt ("Officer Vogt"). Both of them were wearing the same type of uniform as Officer Krull. Officer Leonard was outside the store with Officer Krull. Officer Vogt was inside the store talking to the manager.

While Officers Krull and Leonard were standing in the store's parking lot just to the east of the front double doors, they heard the squeal of tires and saw a white Dodge Dakota pickup truck pull into the Git–N–Go parking lot from Elm Street. The truck pulled in front of the double doors and stopped abruptly. Defendant

---

1. All references to statutes are to RSMo (2000).

was driving the pickup and had two other white males as passengers. Officer Krull made eye contact with Defendant. After the two stared at each other for a moment, Defendant started to back out of the space where he had just parked. As Defendant did so, the left front fender of his vehicle struck a white Jeep Cherokee that was parked beside Defendant's truck. Defendant stopped his vehicle for a moment and watched the driver of the Jeep get out of his vehicle. Defendant then resumed backing up, traveled three or four truck lengths and stopped.

Officer Vogt came out of the store, and all three officers ran toward Defendant's truck. They were trying to get Defendant out of his vehicle. Officer Krull positioned herself about three or four feet in front of the Dakota at the corner of the vehicle's passenger side. She was standing in front of the vehicle's right headlight where she was clearly visible to Defendant. Officer Krull held up her hand with the palm up in a "stop" gesture and yelled at Defendant to stop his engine and get out of the truck. Officer Vogt moved to the driver's door, and Officer Leonard moved to the passenger side door so that the three officers were surrounding the vehicle. As Officer Krull was looking at Defendant, he accelerated forward. Officer Krull jumped backwards, and the truck hit her hand. The impact knocked her off balance, but she was able to stay on her feet. If she had not jumped aside, she would have been run over by the truck.

After Officer Krull regained her balance, she obtained the license number of the Dakota as Defendant was leaving the lot and heading north on Kimbrough. Officer Krull called dispatch and reported the incident as a "possible DWI."

Officer Chad Hampton ("Officer Hampton") was on patrol that morning and observed Defendant's Dakota traveling southbound on John Q. Hammons Parkway. This street ends in a "T" intersection where it meets Grand Street. The truck failed to stop for a flashing red light at Grand Street and proceeded on southward. The vehicle jumped the curb, ran through a fence, knocked over several trees and entered a parking lot belonging to Southwest Missouri State University ("SMSU"). Officer Hampton watched Defendant exit his truck and try to dislodge a tree that was stuck under the vehicle. When Defendant was unable to do so, he got back in his truck and started driving directly at Officer Hampton, even though there were other routes Defendant could have taken to leave the parking lot. Officer Hampton had to draw his firearm in order to get Defendant to stop his truck. Officer Hampton then removed Defendant from the truck at gunpoint and placed him in custody.

After Defendant left the Git–N–Go, Officer Krull also had pursued the Dakota. She arrived at the SMSU parking lot, which was located at 915 E. Normal near the intersection of Grand and Normal streets, after Defendant had been arrested by Officer Hampton. The truck had traveled approximately one mile from the Git–N–Go. When Officer Krull arrived at the SMSU parking lot, she observed that the Dakota had knocked over a tree and destroyed part of the fence before crashing into a parking median in the lot and blowing out a tire. Defendant was being held in the parking lot near his vehicle, and Officer Krull recognized him as the same person who was driving when the Dakota left the Git–N–Go parking lot. By checking the permit number on an SMSU parking tag hanging from the rear-view mirror, Officer Krull confirmed that the truck was registered to Defendant. Defendant was arrested for driving while intoxicated.

In December 2000, a felony complaint was filed against Defendant, and a warrant was issued for his arrest in case number 300CF11297 ("Case 11297"). He was charged with assault of a law enforcement officer in the second degree. In January 2001, a preliminary hearing was held, and Defendant was bound over for arraignment. Defendant waived his right to a jury trial on this charge. His trial commenced on September 18, 2002 before the Honorable Henry Westbrooke, Jr. ("Judge Westbrooke"). The prosecutor made an opening statement, and Officer Krull was sworn as a witness. After she had been asked a few questions, defense counsel moved to dismiss the case on the grounds of double jeopardy.[2] Defendant's motion was based on the following allegations.

At some point not disclosed by the record, misdemeanor charges had been filed against Defendant in the Circuit Court of Greene County, Missouri, in case number 301CM0170 ("Case 0170"). The amended misdemeanor information in Case 0170 contained two counts. Count I alleged that Defendant committed the misdemeanor offense of driving while intoxicated, in violation of § 577.010, "in that on or about the 10th day of November, 2000, at or near John Q. Hammons and Grand, in the County of Greene, State of Missouri, defendant operated a motor vehicle while under the influence of alcohol." Count II alleged that Defendant committed the misdemeanor offense of careless and imprudent driving ("C & I"), in violation of § 304.012, "in that on or about the 10th day of November, 2000, in the County of Greene, State of Missouri, the defendant operated a motor vehicle on a public road or highway at or near 609 East Elm, in a careless and imprudent manner by jump-

ing a curb, going through a parking lot and striking a tree, and thereby endangered the property of another or the life and limb of any person and was at that time involved in an accident." In April 2002, Defendant entered a plea of guilty to the above charges in Case 0170. Sentence was imposed on August 29, 2002.

After summarizing these allegations for the court, defense counsel asked Judge Westbrooke to take judicial notice of the file in Case 0170. Counsel also argued that, when Defendant pled guilty to the C & I charge in Count II, his guilty plea and the sentence later imposed were based on the events involving Officer Krull that took place at the Git–N–Go at 609 E. Elm. Counsel asserted the transcript of the guilty plea and the sentencing hearing would show this to be true, but he was having trouble getting a transcript of these tape-recorded hearings prepared by the Office of State Courts Administrator.

In response, the prosecutor denied defense counsel's assertions were correct and pointed out that Defendant's plea of guilty to the careless and imprudent driving in Count II related to the events that took place in the SMSU parking lot. The prosecutor explained that the reference in the amended misdemeanor information to "609 East Elm" as the location where these events took place was a typographical error:

As to Count 2, it's interesting, I guess you could—apparently Mr. Brumm has pled to something which is not really accurate, but because clearly this incident deals with the second incident in the parking lot and not with our case. . . . I mean, clearly you have a different case here, you have a different victim. . . . If there was a victim in the

**2.** Defendant is represented on appeal by a different attorney than the ones who represented him at trial.

second case, it's Southwest Missouri State University, perhaps the City of Springfield that lost the tree, whatever it is. But you have different victims, you have different elements that you have to prove. We're talking about an intentional assault with different facts at 609 East Elm. This [C & I] charge is actually an inaccurate charge in the sense that it's too vague and it's a different location altogether. It's on the SMS campus.

After listening to oral argument, Judge Westbrooke stopped the trial, continued the case and took the motion to dismiss under advisement. On September 30, 2002, Judge Westbrooke entered the following order:

> By Order of this Court, the State Court Administrator's Office is to prepare the Plea of Guilty and Sentencing of the defendant Douglas J. Brumm in case number 301 CM 0170. This Court needs these two items transcribed in order to make a decision in the above style case number. Three copies shall be prepared and forwarded to the Court.

On April 7, 2003, the judge made a docket entry which states, in pertinent part, as follows: "The court has had an opportunity to review the transcripts of the plea and sentencing in the associate division of this court on the DWI and C & I charges. Deft's motion to dismiss is denied."

On April 18, 2003, Judge Westbrooke recused himself, and the case was reassigned to another circuit judge. The trial resumed on December 3, 2003 and resulted in the judgment and sentence from which Defendant now appeals.

## II. Analysis

■ In Defendant's sole point relied on, he claims the trial court erred in denying his motion to dismiss Case 11297 based on double jeopardy because Defendant had already been punished for the identical conduct when he pled guilty to the misdemeanor C & I charge. Defendant argues that he was twice convicted and punished for endangering the safety of the same person: Officer Krull. We review the trial court's denial of Defendant's motion to dismiss based on double jeopardy *de novo*. *State v. Griffin*, 28 S.W.3d 480, 481 (Mo. App.2000); *State v. White*, 931 S.W.2d 825, 828 (Mo.App.1996).

■ The double jeopardy clause of the Fifth Amendment to the United States Constitution states, in relevant part, that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The double jeopardy clause applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *State v. Burns*, 877 S.W.2d 111, 112 (Mo. banc 1994). The double jeopardy clause provides "two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense." *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998). It is the latter protection which is at issue here because Defendant claims he is being given multiple punishments for the same offense. Therefore, the relevant inquiry is whether the punishment imposed on Defendant because of his conviction for third degree assault on a law enforcement officer for nearly running over Officer Krull duplicates the punishment imposed on Defendant when he pled guilty to the C & I charge in Case 0170. If not, the trial court correctly denied the motion to dismiss because "multiple convictions are permissible if the defendant has in law and in fact committed separate

crimes." *State v. Snider,* 869 S.W.2d 188, 195 (Mo.App.1993).

The premise of Defendant's double jeopardy argument is that: (1) he pled guilty to endangering the safety of Officer Krull when he entered his plea on the C & I charge; and (2) the sentence imposed in Case 0170 was based, at least in part, upon that conduct. We find no support for this argument in the record on appeal.

■ We note that the trial court granted Defendant's request to take judicial notice of the court file in Case 0170. Judge Westbrooke also ordered that transcripts be prepared of the hearings concerning Defendant's guilty plea and sentencing on the C & I charge. The judge did not rule on Defendant's motion to dismiss until these transcripts were received and reviewed. As used in Defendant's assault trial, these transcripts from the misdemeanor case are in the nature of exhibits because the documents contain evidentiary material that was received and reviewed by the trial court at the request of both parties. Defendant has failed to file these exhibits with this Court. It is the duty of an appellant to ensure "the record on appeal includes all the evidence and proceedings necessary for determination of the questions presented." *State v. Sumowski,* 794 S.W.2d 643, 646 (Mo. banc 1990); *see* Rule 30.04(a); *State v. Tobias,* 873 S.W.2d 650, 654 (Mo.App.1994). Since these exhibits were not filed with this Court, we will infer that they would be favorable to the trial court's ruling and unfavorable to Defendant's argument. *State v. Mitchell,* 2 S.W.3d 123, 128 n. 2 (Mo.App.1999); *State v. Creech,* 983 S.W.2d 169, 171 (Mo. App.1998).

Without the transcripts of the guilty plea and sentencing to review, the only other document in the record on appeal which sets out the factual basis for Defendant's C & I charge is the amended misdemeanor information in Case 0170. The information alleged, in pertinent part, that Defendant drove in a careless and imprudent manner "by jumping a curb, going through a parking lot and striking a tree, and thereby endangered the property of another or the life and limb of any person and was at that time involved in an accident." The testimony at Defendant's assault. trial unequivocally established that, after Defendant nearly ran over Officer Krull, he attempted to elude police. While being pursued, he ran a flashing red light at the intersection of John Q. Hammons Parkway and Grand Street, jumped a curb, ran through a fence, knocked down several trees, entered the SMSU parking lot at 915 E. Normal and wrecked his truck. These events occurred over a mile away from where the assault against Officer Krull had occurred. There was ample proof that: (1) Defendant did endanger the property. of another (SMSU and/or the City of Springfield) by destroying property at 915 E. Normal; and (2) Defendant did endanger the life or limb of another (Officer Hampton) by trying to run over the officer with Defendant's truck.

The only allegation in the C & I charge that in any way related to the incident at Git–N–Go was the reference to Defendant operating his truck "on a public road or highway at or near 609 East Elm...." The prosecutor, however, explained that the address reference in the C & I charge was a typographical error. Nothing in the record on appeal contradicts the prosecutor's explanation.

Based on the record before us, the sentences imposed against Defendant in Case 0170, involving the misdemeanor C & I charge, and Case 11297, involving the third degree assault of a law enforcement officer charge, did not punish Defendant twice for the same offense of endangering the safety of Officer Krull. Therefore, the trial court

properly denied the motion to dismiss. Defendant's point is denied, and the judgment is affirmed.

SHRUM and BARNEY, JJ., concur.