**STATE of Missouri, Respondent,**

v.

**Gerrek FRENCH, Appellant.**

**No. ED 92992.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 13, 2010.

N. Scott Rosenblum, Clayton, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Gerrek French (Defendant) appeals the judgment of conviction entered after a jury found him guilty of two counts of forcible sodomy, one count of forcible rape, and one count of kidnapping. Defendant claims the trial court erred in: (1) denying his motion to sever the offenses, and (2) denying his motion for judgment of acquittal as to the forcible sodomy of S.P. We affirm.

### Factual and Procedural Background

On May 6, 2008, a grand jury indicted Defendant on fourteen charges stemming from the allegations of three women who claimed Defendant sexually assaulted them in August and September 2006. Counts 1 through 8 pertained to the alleged assault of C.K. on August 22, 2006 and charged Defendant with one count of forcible rape (Count 1), one count of forcible sodomy (Count 3), four counts of armed criminal action (Counts 2, 4, 6, and 8), one count of first-degree robbery (Count 5), and one count of kidnapping (Count 7). The next three counts, pertaining to S.P. and an incident on September 9, 2006, charged Defendant with one count of forcible rape (Count 9), one count of forcible sodomy (Count 10), and one count of kidnapping (Count 11). The remaining three counts, pertaining to A.C. and an incident on September 21, 2006, charged Defendant with one count of forcible rape (Count 12), one count of forcible sodomy (Count 13), and one count of kidnapping (Count 14).

Prior to his trial, Defendant filed a motion to sever the fourteen counts into three separate cases. Defendant claimed that the offenses were not part of the same scheme or transaction and that trying all the charges together would result in substantial prejudice to him. The trial court denied Defendant's motion to sever.

The trial court conducted a four-day jury trial in January 2009. At the close of the State's evidence, Defendant moved for judgment of acquittal. The trial court granted the motion as to Count 4, but denied the motion as to the remaining counts.

Following the trial, the jury found Defendant guilty on all three counts involving A.C. (Counts 12, 13, and 14) and one count involving S.P. (Count 10). The jury acquitted Defendant of forcible rape and kidnapping with regard to S.P. (Counts 9 and 11) and of armed robbery and armed criminal action with regard to C.K. (Counts 2,

5, 6, and 8).[1] The trial court sentenced Defendant to concurrent twenty-year sentences for Counts 10, 12, and 13, and a ten-year sentence for Count 14 to run consecutively, for a total sentence of thirty years in the Missouri Department of Corrections.

The evidence relevant to each count is presented below. Although the trial court did not convict Defendant on the counts relating to C.K. or the forcible rape and kidnapping of S.P., we examine the evidence relating to those counts because Defendant claims the counts were improperly joined.

On August 22, 2006, C.K. was addicted to drugs and working as a prostitute. After having lunch with a friend, she accepted a ride from Defendant in an area known for prostitution. Defendant was driving a maroon Ford F–150 truck with a distinctive-looking camper shell. After picking up C.K., Defendant stopped at a convenience store to purchase alcohol and a condom and told C.K. he was taking her to his friend's house. Defendant drove C.K. to a carport behind a vacant building where he parked the truck and locked the doors. Defendant told C.K. she "had a smart mouth" and "was going to suck his dick." When C.K. refused, he pulled her head down and forced her to perform oral sex. C.K. tried to grab a knife that she kept in her pocket, but Defendant took the knife from her and ordered her to empty her pockets and remove her pants. While holding the knife, Defendant made C.K. "bend over the back of the [passenger] seat" and vaginally penetrated C.K. from behind.

After the alleged rape, C.K. wiped herself off with tissue, which police later found at the scene along with a used condom and a condom wrapper. C.K. then ran to a neighboring house, whose owner allowed her to use the telephone to call the police. The police took C.K. to the hospital, where hospital personnel performed a rape kit.

On the evening of September 9, 2006, Defendant picked up S.P. in a high-prostitution area in the same maroon truck. S.P. was addicted to drugs and working as a prostitute. S.P. agreed to perform sexual services for Defendant at her house in exchange for money. When Defendant refused to take S.P. to her house, she told Defendant she was no longer willing to have sex with him. Defendant parked the truck in a lot behind a vacant building, told S.P. she had "a smart mouth," pushed her head down, and made her perform oral sex. Defendant then directed S.P. to turn around in the passenger seat, and had vaginal intercourse with her from behind. When he was finished, Defendant drove S.P. back to her neighborhood and gave her $5. Later that night, S.P. led the police to the building where the incident occurred, and there the police collected a condom wrapper that had Defendant's fingerprint.

On the evening of September 21, 2009, A.C. was walking home from a QuickTrip near her home in a high-prostitution area. A.C. was approximately eight months pregnant and addicted to drugs. Defendant pulled his maroon truck up to A.C. and opened the passenger door to talk to her. Defendant then grabbed A.C.'s arm, pulled her into the truck, and drove away. Defendant parked the truck behind a vacant building and forced A.C. to perform oral sex "[b]y grabbing [her] head and pushing it down in his lap." A.C. testified

1. The jury hung on the remaining counts involving C.K., namely forcible rape, forcible sodomy, and kidnapping (Counts 1, 3, and 7). The State entered a memorandum of *nolle prosequi* on those counts.

that she was frightened "for [her] life and the life of [her] child." Defendant ordered A.C. to remove her pants, and he climbed over to the passenger seat. Defendant attempted but failed vaginal penetration while positioned in front of A.C. Defendant told A.C. to turn around and proceeded to vaginally and anally rape her from behind.

After raping A.C., Defendant returned to the driver seat, threw the used condom out the window, and put on another condom. A.C. tried to get out of the truck, but Defendant stopped her by threatening her with a car charger and forced her to perform oral sex again. Defendant then told A.C. to get out of the truck, and A.C. ran home "screaming and crying." A.C. told her mother that she had been raped, and A.C.'s mother called the police. That night, A.C. directed the police to the lot where Defendant raped her, and the police collected a used condom and two condom wrappers. From there, the police took A.C. to the hospital where hospital personnel completed a rape kit.

C.K., S.P., and A.C. testified at trial. The State's evidence also included: testimony from the neighbor who lent C.K. her telephone to call the police; A.C.'s mother; police officers and detectives involved in the three cases; the emergency room nurses who examined C.K., S.P., and A.C.; and a latent fingerprint examiner, three forensic biologists, and a DNA analyst from the St. Louis Metropolitan Police Department Crime Lab. Defendant testified in his own defense and denied all of the allegations.

The jury found Defendant guilty of forcibly sodomizing S.P. and forcibly raping, forcibly sodomizing, and kidnapping A.C., and the trial court sentenced Defendant to a total of thirty years' imprisonment. Defendant appeals.

## Discussion

■ In his first point on appeal, Defendant claims that joinder of the offenses was improper and the trial court abused its discretion in denying his motion to sever. Our review of claims for improper joinder and failure to sever charges involves a two-step analysis. *State v. Love*, 293 S.W.3d 471, 475 (Mo.App. E.D.2009). We first determine whether joinder of the charges was proper as a matter of law. *Id.* If joinder was not proper, then prejudice is presumed and severance of the charges is mandatory. *Id.* If, on the other hand, we find that joinder was proper, we must determine whether the trial court abused its discretion in denying the defendant's motion to sever. *Id.* "The issue of whether joinder is proper is a question of law, while severance is within the trial court's discretion." *Id.*

We first consider whether joinder of Defendant's offenses was proper as a matter of law. Under Missouri law, joinder is proper where the charged offenses are of the same or similar character, are based on two or more connected acts or transactions, or are part of a common scheme or plan. Mo.Rev.Stat. § 545.140.2; Mo. Sup. Court Rule 23.05; *Love*, 293 S.W.3d at 475. In the interest of judicial economy, Missouri courts favor liberal joinder of offenses. *State v. Dizer*, 119 S.W.3d 156, 161 (Mo.App. E.D.2003).

■ "The use of similar tactics in the commission of multiple crimes is sufficient to show that the offenses are of the same or similar character." *State v. Spencer*, 62 S.W.3d 623, 625 (Mo.App. E.D.2001). "Some of the factors courts consider to determine if a defendant's tactics are similar in character include: (1) similarity in the type of offenses; (2) similarity in the victims' sex and age group; (3) commonality of the location where the offenses took place; and (4) closeness in time between

the crimes." *State v. Chambers*, 234 S.W.3d 501, 508–09 (Mo.App. E.D.2007). In the instant case, joinder of the offenses was proper because Defendant used similar tactics. Specifically, Defendant approached all three victims in the same truck in high-prostitution areas. Defendant then drove each victim to parking pads behind vacant buildings, where he pushed the victims' heads into his lap while he was seated in the driver's seat of his truck. In two of the three incidents, Defendant used similar language in telling the victim she had "a smart mouth." Defendant forced the three victims to perform oral sex and then raped each woman from behind in the passenger seat of his truck. Additionally, the three incidents occurred within the same one-month period.

Defendant argues that the "evidence fails to evince a similar character among the offenses or a common scheme or plan" because the three victims entered Defendant's truck under different circumstances and only one victim alleged that Defendant used a knife. "The mere existence of differences among the counts does not defeat joinder." *Love*, 293 S.W.3d at 476 (quotation omitted). We find the victims, the offenses, and the locations of the offenses were sufficiently similar to render joinder proper.

In support of his argument that joinder was improper, Defendant relies upon *State v. Kelly*, 956 S.W.2d 922 (Mo.App. W.D. 1997). In *Kelly*, the Western District held that joinder of charges arising from four armed robberies was improper because the crimes were not related in time and the tactics used were not the same or similar in character. *Id.* at 925. The *Kelly* court explained:

The only real similarity between the first crime and the later three crimes is that in all four instances [the defendant] was accompanied by another man and committed armed robberies. However, there was nothing distinctive about the tactics used which made it likely that the same person was involved in each robbery.

*Id.* at 926. *Kelly* does not support Defendant's argument because the differences he lists in his brief are not equivalent to the differences that rendered joinder improper in *Kelly*. See *State v. Holliday*, 231 S.W.3d 287 (Mo.App. W.D.2007) (rejecting the defendant's reliance on *Kelly* for support of his argument that joinder of his statutory sodomy and statutory rape charges was improper). Unlike the crimes in *Kelly*, Defendant's crimes involved similar victims, similar tactics, and similar locations, and they were proximate in time.

■■■■ Having determined that joinder of the counts was proper, we next consider whether the trial court's denial of severance constituted an abuse of discretion and manifested substantial prejudice. *Love*, 293 S.W.3d at 476. The trial court is afforded broad discretion as to severance. *Spencer*, 62 S.W.3d at 625. The trial court's decision will not be reversed absent a showing of an abuse of discretion and "a particularized showing of substantial prejudice." Mo. Sup. Court Rule 24.07; *see also* Mo.Rev.Stat. § 545.885; *Love*, 293 S.W.3d at 475. In determining whether the trial court abused its discretion, we consider the number of offenses joined, the complexity of the evidence, and the likelihood that the jury could distinguish the evidence and apply it, without confusion, to each offense. *Dizer*, 119 S.W.3d at 162.

Our review of the record reveals no abuse of discretion in the trial court's denial of Defendant's motion to sever the offenses. The record shows that the facts relevant to each offense were not complex and the proof the State offered as to each charge was distinct and uncomplicated.

Nothing in the record indicates that the jury could not distinguish between the evidence and legal principles applicable to each crime and each victim. *See Conley,* 873 S.W.2d at 238. Indeed, the fact that the jury found Defendant guilty of only four of the thirteen counts before it indicates that the jury was able to distinguish the evidence and intelligently apply the law to each offense. *See State v. Davis,* 860 S.W.2d 369, 373 (Mo.App. E.D.1993) (holding that joinder of thirty-nine counts stemming from sexual assaults of fourteen women did not prejudice the defendant where he was convicted of only twelve counts relating to five of the women). Furthermore, "clear instructions can help a jury competently distinguish between offenses." *State v. Howton,* 890 S.W.2d 740, 745 (Mo.App. W.D.1995). Here, each offense was set forth in a separate jury instruction, and the trial court specifically instructed the jury that "[e]ach count must be considered separately."

▮ Defendant claims that he suffered substantial prejudice as a result of the trial court's refusal to sever the offenses because the jury heard evidence of other crimes charged that would not have been before the jury had the trial court granted Defendant's motion to sever. "Severance of jointly charged offenses is not mandated merely because evidence relating to one count would not be admissible in the trial of a second count if the two were tried separately." *Conley,* 873 S.W.2d at 238. Defendant failed to carry his burden of establishing a particularized showing of substantial prejudice. Point denied.

▮ In his second and final point on appeal, Defendant claims that the trial court erred in denying his motion for judgment of acquittal as to the forcible sodomy of S.P. because the evidence "was insufficient to establish forcible compulsion as required to sustain a conviction of forcible

sodomy." Specifically, Defendant argues that the State failed to carry its burden to prove forcible compulsion because it presented no evidence of either resistance on the part of S.P. or a threat that would cause a reasonable person to fear serious injury.

"In reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State and disregard all evidence and inferences to the contrary." *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable fact-finder could find the defendant guilty beyond a reasonable doubt. *Id.*

▮ "A person commits the crime of forcible sodomy if such person has deviate sexual intercourse with another person by the use of forcible compulsion." Mo.Rev. Stat. § 566.060.1. Section 556.061.12 defines the term "forcible compulsion" to mean either: "(a) Physical force that overcomes reasonable resistance; or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person." Mo.Rev.Stat. § 556.061.12. "Physical force is simply force applied to the body." *State v. Vandevere,* 175 S.W.3d 107, 108 (Mo. banc 2005) (quotation omitted). "The force involved need not come after the victim has physically resisted. Rather, the force used must be calculated to overcome the victim's resistance." *Id.* (quotations omitted).

At trial, S.P. testified that she willingly entered Defendant's truck and agreed to perform sexual services for Defendant in exchange for money, but she changed her mind when he refused to drive her to her

house, the location she specified for performing the acts, and instead drove her down "a vacant alley." Although S.P. informed Defendant that she did not want to go there with him, Defendant parked the car behind a vacant building. S.P. testified: "I told him that I didn't want to do nothing and he said something about I got a smart mouth and he took my head and did it like that and made me give him oral sex." The record reflects that S.P. "made a motion with her hand pushing her head down." When the prosecutor asked S.P., "Did he force your mouth onto his penis?," she replied "Uh-huh." The trial court asked S.P., "Is that a yes, ma'am?," and S.P. answered, "Yes." S.P. also explained: "he pushed my head down and he's a—I'm little. He's bigger than me and I was scared. I was terrified. So I did whatever he told me to do." When the prosecutor asked S.P. on redirect examination why she did not attempt to jump out of the truck and run away, S.P. answered, "Because he is bigger than me and I'm a little bitty person. I didn't know if he was going to run me over or I just didn't know."

In determining whether the force used was sufficient to overcome reasonable resistance, we look to the totality of the circumstances. *Vandevere,* 175 S.W.3d at 109. At the time of the incident, S.P. was 4' 11" and weighed approximately 140 pounds, whereas Defendant was 5' 9" and weighed approximately 250 pounds. Defendant drove S.P. to an isolated parking pad after she refused to engage in sexual activity with Defendant. S.P. testified that she was considerably smaller than Defendant, she felt "terrified," and Defendant ignored S.P.'s protests and physically pushed her head into his lap. We find there was sufficient evidence from which a reasonable fact-finder could find that Defendant's actions constituted the use of forcible compulsion against S.P.

Defendant argues that the State failed to prove forcible compulsion because it presented no evidence that S.P. resisted Defendant's use of physical force and, therefore, "one cannot determine if the force used when her head was 'pushed' was significant enough to overcome reasonable resistance." Missouri law does not require a sexual assault victim to offer physical resistance if she submits through fear of personal violence. *Spencer,* 50 S.W.3d at 874. Nor does Missouri law "require or expect the utmost resistance to sexual assault when it appears that such resistance would be futile or would provoke more serious injury." *Vandevere,* 175 S.W.3d at 109. Thus, the State need not demonstrate that S.P. physically resisted Defendant's physical force in order to show that he used forcible compulsion. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.