**STATE of Missouri, Plaintiff–Respondent,**

v.

**Samuel Wayne BOLTHOUSE, Defendant–Appellant.**

**No. SD 31153.**

Missouri Court of Appeals,
Southern District,
Division One.

March 14, 2012.

Erika R. Eliason, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Robert J. (Jeff) Bartholomew, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Samuel Wayne Bolthouse ("Defendant") was convicted after a jury trial of first-degree robbery, *see* section 569.020,[1] and received a fourteen-year sentence. Defendant now appeals his conviction, claiming the evidence adduced at trial was insufficient to convict him of that offense "in that the State did not provide sufficient evidence to support the fact that a weapon was used in the course of the robbery or that the victims felt threatened by a weapon during the course of the robbery." Finding no merit in this contention, we affirm the conviction.

### Applicable Principles of Review

■ "In deciding whether evidence at trial supports the conviction, 'this court determines whether there was sufficient evidence from which a reasonable juror might have found defendant guilty beyond a reasonable doubt.'" *State v. Saucy,* 164 S.W.3d 523, 526 (Mo.App. S.D.2005) (quoting *State v. Woodson,* 140 S.W.3d 621, 627 (Mo.App. S.D.2004)). "We accept as true all evidence supporting the verdict and the reasonable inferences flowing therefrom." *State v. Belton,* 949 S.W.2d 189, 192 (Mo. App. W.D.1997). Further, "[a]ll evidence and inferences to the contrary are discarded." *Id.* Finally, it is not this court's place to "weigh the evidence, or determine the reliability or the credibility of witnesses." *Id.* (internal citations omitted). Rather, on such matters "[w]e afford 'great deference' to the fact finder." *Saucy,* 164 S.W.3d at 526 (quoting *Woodson,* 140 S.W.3d at 628).

### Facts

On March 6, 2009, Miranda Clester ("teller") and Rebecca Hall ("manager") were working at Focus Bank in Cardwell ("the bank"). Each was helping customers at a separate teller's station when Defendant, wearing a jacket, hat, and sunglasses, entered the bank at about two o'clock in the afternoon. Defendant moved back and forth in front of the two teller stations as if "trying to decide where to go." At one point, teller passed manager and said she thought Defendant was "creepy."

■ When teller finished the transaction with her customer, Defendant approached and handed her a note.[2] The

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. The note was introduced into evidence as State's Exhibit 3 and published to the jury. However, State's Exhibit 3 was not made a part of the record on appeal. It is the appellant's duty to ensure that we are provided with all of the record necessary to determine the points on appeal, Missouri Court Rule 30.04 (2011), and "[w]hen an exhibit is omitted from the transcript and is not filed with the appellate court, the intendment and con-

note was "very messy," but teller believed it was a robbery note and she felt threatened. Teller noticed that Defendant "had a hand in a pocket." She did not know if there was anything else in that pocket, but she was afraid that he had a weapon "[b]ecause [she] felt like [they] were getting robbed and his hand was in his pocket." Teller told Defendant that she could not read the note; Defendant replied by simply pointing to the note.

When teller repeated that she could not read the note, Defendant told her that "he had an $11,000 check to cash." Teller informed Defendant that the bank would not cash a check for him unless he had an account. Teller asked Defendant if she could take the note to manager to get her help in reading it, but Defendant then asked to have the note back. At some point during this conversation, manager, who was keeping an eye on the interaction between teller and Defendant, hit the button to activate the bank's silent alarm because she "knew something was going on [and Defendant] was going to be a problem[.]" When Defendant walked away from teller's station, teller walked to the back of the bank. Teller had been unable to trigger her alarm without looking for it, and she wanted to use the phone in the back of the bank to call the police.

Defendant walked over to the workstation where manager was assisting another customer with a deposit. Most of the cash from that deposit had been put away, but some was still on the counter. Defendant pushed his way between manager's customer and the counter and slid the note across the counter to manager. Manager did not try to read the complete text of the note, but she did see a part of it which said "stick up and die die [sic]."

During the encounter, Defendant kept his left hand in his pocket. Manager thought he had a knife in the pocket. Manager did not think the object in Defendant's pocket was a gun because "a gun would have been a bigger bulge ... but [she] figured he had something in his pocket." Manager felt threatened because of the note and "the business with the pocket[.]" Manager told Defendant that she could not read the note and asked what he wanted. Defendant hopped up, grabbed the cash that was still lying on the counter, and also tried to grab the note. This was the only time manager saw Defendant take his hand out of his pocket. Defendant then left the bank, mounted his getaway vehicle—a red bicycle—and pedaled away.

The customer who had just deposited the cash taken by Defendant left the bank a minute or so after Defendant. When she got outside, Defendant had made it across the street but was still in view. The customer followed Defendant for a few blocks until he stopped, put the bike in a shed, and went into a house. The customer then returned to the bank and told one of the police officers who had arrived that she could take him to the place Defendant had gone. The officer accompanied the customer to the house Defendant had entered. A few minutes later, he and other officers apprehended Defendant at that home.

Defendant was charged with first-degree robbery under section 569.020.1(4).[3] The case went to trial on January 7, 2011. After the above-described evidence was

---

tent of the exhibit will be taken as favorable to the trial court's ruling and as unfavorable to Defendant." *State v. Creech*, 983 S.W.2d 169, 171 (Mo.App. E.D.1998).

**3.** The amended information charged that "[D]efendant forcibly stole U.S. money in the possession of Rebecca Hall and/or Miranda Clester, and in the course thereof the defendant threatened the use of what appeared to be a deadly weapon[.]"

adduced, the jury was instructed on first-degree robbery,[4] second-degree robbery, and two versions of stealing. The jury returned a verdict finding Defendant guilty of first-degree robbery. The judge accepted that verdict and later sentenced Defendant as a persistent offender as set out above. This appeal timely followed.

### Analysis

In his sole point relied on, Defendant claims the evidence adduced at trial was insufficient to support his conviction because it did not include evidence "that a weapon was used in the course of the robbery or that the victims felt threatened by a weapon during the course of the robbery." Defendant purports to support his claim by pointing out that neither manager nor teller testified that they actually saw a weapon, and both women stated at various times that they could not read Defendant's note. This argument is without merit.

■■■■ As charged, Defendant could be convicted of first-degree robbery if the State proved beyond a reasonable doubt that he forcibly stole property and threatened "the use of what appear[ed] to be a deadly weapon" during the course of the crime. Section 569.020.1(4). "[T]he thrust of the robbery first degree statute is to encompass those situations where the victim is placed *either* in unusually great danger *or* fear of bodily injury." *State v. Humphrey*, 789 S.W.2d 186, 189 (Mo.App. E.D.1990) (emphasis in original). In other words, "the State does not have to show that the defendant actually possessed a dangerous instrument, only that there was evidence from which the fact finder could reasonably conclude that the victim believed the defendant was threatening its

use." *Lewis v. State*, 24 S.W.3d 140, 144 (Mo.App. W.D.2000). That is,

Robbery in the first degree may be found where the victim is in fear even though there was no real possibility of injury. The fact that a victim perceives there to be a weapon that remains unseen is sufficient whether or not, in fact, such a weapon exists. Whether or not the object that is perceived as a deadly weapon or dangerous instrument is in fact capable of producing harm is unimportant. The threat to use the object to produce harm transmogrifies it into a dangerous instrument.

*Belton*, 949 S.W.2d at 192–93 (internal citations and quotations omitted).

Missouri courts have repeatedly held evidence sufficient to support a first-degree robbery conviction if the defendant either made motions indicating he had a concealed weapon during the course of the robbery, he manifested physical indications suggesting the presence of a weapon while making threatening statements, or both. *See, e.g., id.*; *Saucy*, 164 S.W.3d at 527 (the defendant threatened the use of a dangerous instrument when he held something in his hand under a white cloth and told the victim to open the cash register drawer); *Lewis*, 24 S.W.3d at 141 (a reasonable juror could conclude that appellant threatened the use of a dangerous instrument when he told a store clerk, "Don't make me shoot you," while motioning beneath his sweater and then said to hurry or he would "blow her head off"); *Belton*, 949 S.W.2d at 193 (it was reasonable for the victim to conclude the defendant threatened the use of a "dangerous weapon" when he said "don't make me shoot you" while having a hand in his pocket); *State v. McCracken*, 829 S.W.2d 634, 635–36 (Mo.App. W.D.1992) (it was reasonable

---

4. The verdict director instructed that the jury must find that "[D]efendant displayed or threatened the use of what appeared to be a deadly weapon[.]"

to believe the defendant threatened the use of a deadly weapon or dangerous instrument when he twice told the victims to keep their heads down "or there would be a killing[,]" one victim saw defendant's hand in his pocket with a bulge that was larger than his hand, and another victim saw something protruding out of the defendant's coat near his hand); *Humphrey*, 789 S.W.2d at 188–89 (evidence that one victim saw "something protruding under the material of the jacket pocket" that the defendant wore and that the defendant told the victims to stay on the floor or he would " 'blow' their brains out" "manifestly support[ed]" the threatened use of deadly weapon or dangerous instrument).

█ In similar manner here, Defendant kept his hand in his pocket during his interactions with teller and manager except for the moment when he tried to retrieve his note. Both testified that this made them believe Defendant had a weapon, and both felt threatened by it. Defendant passed each woman a note that contained the words "stick up" and "die." Such evidence was sufficient for a reasonable juror to find beyond a reasonable doubt that Defendant had threatened the use of what appeared to be a deadly weapon. *See McCracken*, 829 S.W.2d at 635–36.

In support of his contrary argument, Defendant discusses *State v. Reed*, 670 S.W.2d 545 (Mo.App. E.D.1984). He also emphasizes testimony about the difficulty manager and teller had in reading his note, testimony from manager that she was stalling because she had activated the alarm, and suggests the fact that both teller and manager failed to cooperate with him demonstrated that they were not in fear. These arguments ignore our standard of review.

In *Reed*, as in the present case, the victim did not see a weapon during the attack by the defendant and another robber, but he believed that both men were armed. 670 S.W.2d at 546. The record on appeal did not reveal whether the victim saw a bulge or if either robber made any gesture suggesting the possession of a weapon, but a subsequent search of the second robber when he was located about fifteen minutes later revealed a gun. *Id.* On appeal, the Eastern District reversed the conviction, determining that the victim's testimony that he thought the defendant was armed was insufficient to support the verdict.

There are critical differences between *Reed* and the instant case. As charged in *Reed*, a robbery in the first degree did not hinge upon Reed's co-participant *threatening* the use of what appeared to be a deadly weapon (as provided in section 569.020.1(4)); instead, the enhancement to first degree charged in that case depended upon Reed's co-participant *being actually armed* with a deadly weapon during the robbery (as provided in section 569.020.1(2)). *Id.* at 547. As discussed above, the first-degree robbery statute encompasses alternative types of harm-danger or fear. *Humphrey*, 789 S.W.2d at 189. Subsection (2) addresses the element of danger present when a robber is actually armed with a deadly weapon. *State v. Steffenhagen*, 671 S.W.2d 344, 346 (Mo. App. E.D.1984). Subsection (4) addresses "the fear generated by that which may be neither a deadly weapon nor a dangerous instrument but which is utilized so as to give the appearance of being such, as for instance a toy pistol, a protruding finger in the pocket or a soft rubber baseball bat." *Id.*[5]

5. It is also significant to note that in reaching its result, the Eastern District applied the circumstantial evidence rule—a rule since rejected by our supreme court. At the time

Application of the appropriate standard of review also defeats Defendant's remaining argument. It is true that Defendant's note was "messy," and both manager and teller told Defendant that they could not read it. Manager also admitted that she told the police at one point that she could not read the note. While the jury could have inferred from this evidence that manager and teller were not afraid, it was not required to do so. It could have inferred instead that their fear motivated them to make these statements in an attempt to resist or delay Defendant's robbery until law enforcement could respond to manager's call for help. Because the inference promoted by Defendant is contrary to the verdict, it must be disregarded. *Belton,* 949 S.W.2d at 192.[6]

The evidence adduced at trial was sufficient to allow a reasonable juror to find that Defendant threatened the use of a deadly weapon during the course of the robbery. Defendant's point is denied, and the judgment of conviction and sentence is affirmed.

RAHMEYER and LYNCH, JJ., concur.

---

*Reed* was decided, if the State's case was based solely on circumstantial evidence, the defendant could only be convicted if "[t]he facts and circumstances [are] consistent with each other and with the hypothesis of defendant's guilt, and inconsistent with his innocence." 670 S.W.2d at 547. In *State v. Grim,* 854 S.W.2d 403 (Mo. banc 1993), our high court rejected the circumstantial evidence rule and ordered that it no longer be followed. *Id.* at 408. As a result, the State is no longer required to disprove every possible theory of innocence in order to obtain a conviction based on circumstantial evidence. *Id.*

6. Defendant also ignores teller's testimony that she believed the note suggested a robbery and that the note was also presented to the jury for its consideration. Further, the jury could consider the fact that manager activated the bank's silent alarm something she had never done before in her twenty years of working at the bank-was a result of her fear of what Defendant was doing.