

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

RYAN ANTHONY TATHAM,      )
     )
         Appellant,     )
     )    **WD87280**
v.      )
     )    **OPINION FILED:**
     )    **May 27, 2025**
STATE OF MISSOURI,      )
     )
         Respondent.    )

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Cotton Walker, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer

Mr. Ryan Tatham ("Tatham") appeals the judgment of the Circuit Court of Cole County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for post-conviction relief ("PCR") pursuant to Rule 29.15, which asserted that his trial counsel's assistance was constitutionally ineffective. We affirm.

**Facts and Procedural History**[1]

Following a bench trial, Tatham was ultimately convicted of two counts of attempted first-degree robbery and one count of second-degree kidnapping. He was sentenced to concurrent terms of five, five, and four years' imprisonment respectively. We affirmed Tatham's convictions in *State v. Tatham*, 626 S.W.3d 350 (Mo. App. W.D. 2021) (mem.), finding the evidence was sufficient to support all convictions. The evidence supporting Tatham's convictions was as follows.

In 2018, Tatham obtained a specialized loan that allowed him to both purchase a foreclosed property and hire a contractor to perform construction on it.[2] The loan required Tatham to hire a licensed and insured contractor to perform the work, so Tatham hired Victim.[3] Victim contracted to be paid half of the money up front before work began with the remaining balance to be paid upon completion of the work after Tatham signed a release.

After most of the work had been done, Tatham contacted Victim to complain about some debris remaining in the basement from Victim installing a drop ceiling.

---

[1] "On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the underlying criminal conviction as those facts bear upon the motion court's judgment." *Morrison v. State*, 619 S.W.3d 605, 607 n.1 (Mo. App. W.D. 2021) (citing *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018)).

[2] Many of the underlying facts are taken directly from the legal memorandum supplementing the *per curiam* order issued to Tatham in his direct appeal, *State v. Tatham*, 626 S.W.3d 350 (Mo. App. W.D. 2021) (mem.), without further attribution.

[3] Pursuant to the directive of section 509.520.1(4)-(5), (7) (Supp. IV 2024), we do not use the names of any victims, witnesses, or minors in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through May 9, 2024, unless otherwise indicated.

Victim offered to come by to clean up the remaining debris, but Tatham warned, "If you come to my house, my dogs are gonna bite you." Victim knew from prior interactions with Tatham that Tatham had four large, aggressive dogs to "protect his house and protect his family." Victim decided he did not want to have any contact whatsoever with Tatham anymore, so he notified the lender that he did not want the second installment payment despite completing ninety-five percent of the work.

On August 14, 2019, nearly eight months after Victim last worked on Tatham's house, Victim was driving with his minor son when he received a phone call from his minor stepson, who was at Victim's home. Stepson told Victim that an angry guy at the front door was looking for Victim, saying that Victim owed him money. When Victim arrived home and exited his vehicle, he saw Tatham charging towards him, with his hands behind his back, yelling and screaming at Victim. Victim told Son to "run."

Tatham shouted at Victim: "You stole my f[**]king money. You took my f[**]king money. You took my f[**]king money." Tatham was also gritting his teeth, bobbing his head, and keeping his hands behind his back. Victim protested that he did not know what Tatham was talking about, that he did not take any of Tatham's money, and that he did not know why Tatham was at his home. Victim pleaded with Tatham, offering him "whatever you want," as Victim feared for both his family's and his own safety because he believed that Tatham had a gun behind his back. Tatham told Victim, "Either you give me my f[**]king money, or I'm gonna take it out of you." During this interaction, Tatham kept at least one arm behind his back at all times.

3

In response to Tatham's threat, Victim advised that he had some cash inside the house and offered to give it to Tatham. Tatham refused to let Victim go inside, saying, "You ain't going in that f[**]king house, because you'll call the cops if you go in the house. You call [Stepson] and have him bring it out here." So, Victim called Stepson and had him bring out an envelope containing $700 in cash.

Tatham was not satisfied with the amount, saying it was not enough. Victim offered to write a check, but Tatham refused, saying that Victim would just cancel it. Victim then offered to drive to an ATM. Tatham agreed and closely followed behind Victim's truck to the ATM.

When they reached the ATM, Victim stopped his truck about thirty yards from the ATM, got out, and told Tatham to wait there for him because he was concerned that Tatham would shoot Victim after seeing Victim's PIN, withdraw all of Victim's money, and then drive off. Tatham got out of his car and sat on the hood with one hand behind his back. Victim asked Tatham, "Are you gonna shoot me?" And Tatham looked at Victim like Victim was stupid and responded, "Not in broad daylight." Victim withdrew $800 and gave it to Tatham. Tatham then drove off, leaving Victim at the bank.

Throughout the entire interaction, Victim feared that Tatham had a gun and would shoot Victim. At trial, Victim testified, "I gave him that money because he was gonna hurt me if I didn't give him that money." Surveillance footage at the ATM confirmed Victim's account of the interaction at the bank ATM.

Tatham was arrested two days later. In a search of Tatham's home, police recovered Victim's money and numerous firearms, ranging from handguns to long guns.

4

During a subsequent interview, Tatham admitted going to Victim's home but minimized his actions. Tatham acknowledged that it was reasonable for Victim to believe that Tatham was concealing a gun, based on the fact that he kept one hand behind his back. Tatham maintained, however, that this was his natural posture. Tatham acknowledged receiving $700 from Victim at Victim's house, that Tatham would not allow Victim to go inside the house to get the money, and that Tatham refused Victim's offer to write a check. Tatham further admitted that, when Victim asked, "Are you gonna shoot me?" Tatham responded, "Not in broad daylight."

After Tatham's direct appeal of his convictions to this Court was denied, he filed a PCR motion pursuant to Rule 29.15,[4] which claimed in relevant part that his trial counsel provided ineffective assistance by failing to present facts showing Tatham did not kidnap Victim.

On March 4, 2024, an evidentiary hearing ("PCR hearing") was held before the motion court in which Tatham's trial attorney testified to the following:

> [Tatham's PCR Attorney]: Now, you did take the deposition of the young son that was with [Victim] at the time of the incident?
>
> [Trial Counsel]: Uh-huh.
>
> [Tatham's PCR Attorney]: And do you recall what he told you what happened when Mr. Tatham came up to the truck?
>
> [Trial Counsel]: I don't.
>
> [Tatham's PCR Attorney]: Was there some reason why you did not call him at trial?

---

[4] All rule references are to I MISSOURI COURT RULES – STATE 2022.

[Trial Counsel]: You're talking about [Son]?

[Tatham's PCR Attorney]: Yes.

[Trial Counsel]: As I remember it, my memory is I don't think he had anything real helpful for us at trial.

[Tatham's PCR Attorney]: If I tell you that [Son] testified that Mr. Tatham walked up to the truck rather than ran like everybody testified to, do you think that would have been important?

[Trial Counsel]: At what point did he supposedly walk or run to the truck?

[Tatham's PCR Attorney]: At the very beginning when he confronted his dad, he said that he walked a moderate pace up to the truck. Do you not think that that was important to counteract what the other people testified to?

[Trial Counsel]: I think—Well, I think different perceptions—Probably at the time what I thought of his overall deposition was that it likely wasn't helpful. But that's a fact that could be considered, sure.

On May 9, 2024, the motion court issued its "Findings of Fact, Conclusions of Law, and Judgment" denying Tatham's PCR motion. The Judgment contained the following findings, in pertinent part:

> The overwhelming evidence adduced at trial was that Victim believed that [Tatham] had a weapon, and was in fear for his life, not only due to [Tatham] having a hand behind his back, but also by acting in a highly aggressive manner. . . . [Tatham's trial attorney] testified that he made a decision for trial strategy reasons not to call [Son] to the stand, as the potential negatives of calling the witness outweighed any benefit. . . . [Tatham's trial attorney] testified that he made a number of trial strategy considerations, and that he did the best he could with the facts he had. . . . The Court has not been presented any credible evidence to establish by a preponderance of the evidence that [Tatham's trial attorney's] conduct, under the circumstances, was not sound trial strategy. . . . This Court finds that the only credible evidence submitted in this matter leads to the conclusion that [Tatham's trial attorney] was constitutionally effective throughout his representation of [Tatham].

6

Tatham timely appealed.  In his sole point on appeal, Tatham argues the motion court clearly erred in denying his claim that his trial counsel provided constitutionally ineffective assistance by not calling Son to testify at trial.

**Standard of Review**

"Appellate review of a motion court's dismissal of a post-conviction relief motion is limited to determining whether the findings and conclusions of law are clearly erroneous." *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017) (citing *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014)); *see also* Rule 29.15(k).  To find that a decision was clearly erroneous, this Court must form a "definite and firm impression that a mistake has been made after a review of the entire record." *Propst*, 535 S.W.3d at 735 (quotation marks omitted) (citing *Price*, 422 S.W.3d at 294).  "The motion court's findings of fact and conclusions of law are presumed to be correct." *Beck v. State*, 637 S.W.3d 545, 551 (Mo. App. W.D. 2021) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)).  We "defer[] to the [motion] court's factual findings and credibility determinations.  As such, this Court accepts the [motion] court's findings as to trial counsel's knowledge and strategic decisions." *Zink v. State*, 278 S.W.3d 170, 178 (Mo. banc 2009) (citations omitted).

**Analysis**

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  Under *Strickland*, the movant

7

must demonstrate: "(1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* (citing *Strickland*, 466 U.S. at 687). If the movant fails to prove either prong, relief cannot be granted. *Hecker v. State*, 677 S.W.3d 507, 512 (Mo. banc 2023). If the movant fails to satisfy either prong, we need not address the other. *Staten v. State*, 624 S.W.3d 748, 750 (Mo. banc 2021); *Shores v. State*, 674 S.W.3d 127, 133 (Mo. App. W.D. 2023). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we may begin our analysis with the second prong. *Strickland*, 446 U.S. at 697.

We begin our analysis by addressing the prejudice prong, finding that there is simply no prejudice irrespective of any complaint Tatham had of his trial counsel.

To establish the prejudice prong, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. "[S]imply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead the [movant] must show that, absent the error, there is a reasonable probability that he would have been found not guilty." *Johnson v. State*, 189 S.W.3d 640, 645 (Mo. App. W.D. 2006).

"Where . . . there is overwhelming evidence of guilt, such that it cannot be reasonably said that, but for the challenged actions of trial counsel, the jury would have

8

found the movant not guilty . . . the movant suffers no prejudice." *McCoy v. State*, 431 S.W.3d 517, 522 (Mo. App. E.D. 2014) (quoting *Dawson v. State*, 315 S.W.3d 726, 733 (Mo. App. W.D. 2010) (omission in original) (quotation marks omitted)).

Here, Victim testified that Tatham confronted him at his house and aggressively demanded cash; Victim believed Tatham was hiding a gun and was in fear for both his life and the lives of multiple young family members present during the encounter; Tatham verbally threatened Victim multiple times; Tatham would not allow Victim to enter his house to retrieve cash and instead forced Stepson to retrieve cash from inside the house; and, Tatham forced Victim to drive to an ATM and withdraw even more cash. Victim's testimony was corroborated by other witnesses at trial, by surveillance footage at the ATM, by law enforcement's discovery of Victim's cash and multiple handguns in Tatham's home, and by Tatham's admission that the cash belonged to Victim. This evidence is sufficient to establish an overwhelming impression of Tatham's guilt.

Tatham argues that Son's testimony was necessary to refute Victim's testimony that Tatham charged the Victim at the onset of their encounter. In making this argument, Tatham erroneously posits that the only reason Tatham was convicted of kidnapping was because he *charged* the Victim—which ignores the evidence that Tatham approached Victim *while Victim reasonably believed Tatham possessed a gun* and while simultaneously shouting profanity-laced accusations and demands at Victim and that Tatham then refused to let Victim leave his presence to retrieve the cash he demanded.

For a witness's belief of a weapon to be credited as reasonable under the circumstances, the victim must perceive there is a hidden weapon. *Berry v. State*, 676

9

S.W.3d 516, 519-20 (Mo. App. E.D. 2023).  Such belief will be sufficient, "whether or not, in fact, such a weapon exists."  *Id*. at 519 (quoting *State v. Bolthouse*, 362 S.W.3d 457, 460 (Mo. App. S.D. 2012)).  Accordingly:

> There must simply be sufficient evidence demonstrating that the victim reasonably believed the defendant was threatening the use of a deadly weapon—irrespective of its actual existence. . . .  [S]ufficient evidence exists to support such a belief where the defendant either made motions indicating he had a concealed weapon during the course of the robbery, he manifested physical indications suggesting the presence of a weapon while making threatening statements, or both.

*Id.* at 519-20 (citations and quotation marks omitted).  Here, the motion court recounted the evidence found to be *sufficient* in Tatham's direct appeal that the kidnapping conviction was based on multiple witnesses' reasonable beliefs that Tatham possessed a weapon—because he kept at least one hand behind his back at all times throughout the encounter and acted and spoke in an aggressive manner.  We agree with the motion court's conclusion that the evidence was overwhelming that Tatham's acts of physical intimidation provided clear and unequivocal support for Tatham's kidnapping conviction.  In other words, whether Tatham "charged" Victim by running or walking at Victim on his property is immaterial; instead, what is material is that he did so in a manner that was aggressive, threatening, and designed to impart the reasonable belief to Victim and members of his family, who were minors, that he would inflict grave bodily harm upon anyone leaving his presence without his permission or otherwise not following his profane demands to retrieve cash from Victim's home.

Ultimately, Tatham's argument on the topic of prejudice is nothing more than Tatham's conclusory claim that he was "prejudiced by trial counsel's failure to call [Son]

as a witness." Yet, "[w]ithout more, a conclusory allegation is insufficient to establish a claim of ineffective assistance of counsel." *McLemore v. State*, 635 S.W.3d 554, 563 (Mo. banc 2021). Thus, Tatham's general, conclusory allegation is insufficient to support a claim of ineffective assistance of counsel, and Tatham has failed to provide evidence amounting to a reasonable probability he would have been found not guilty had Son's testimony on a collateral matter been introduced at trial.

The motion court did not clearly err in concluding that Tatham failed to meet his burden of establishing the *Strickland* prejudice prong.[5]

---

[5] *Ex gratia*, Tatham likewise cannot meet his burden of establishing the *Strickland* performance prong.

> To prevail on a claim of ineffective assistance of counsel for failure to call a witness, the following must be shown: 1) [t]rial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify[;] and 4) the witness's testimony would have produced *a viable defense*. Even then, counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel *unless* the defendant clearly establishes otherwise. As a matter of trial strategy, the determination to not call a witness is *virtually unchallengeable*. If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance.

*Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005) (emphasis added) (citations and quotation marks omitted).

Here, the motion court found Tatham's trial counsel "made a decision for trial strategy reasons not to call Son to the stand, as the potential negatives outweighed any benefit." Indeed, Tatham's trial counsel testified that he believed the testimony would not be helpful at trial. For, the testimony would not have unqualifiedly provided a defense to Tatham and, instead, only differed from Victim's testimony as to whether Tatham walked or ran towards them in the initial confrontation. Son's testimony would not have altered the reasonable belief of multiple witnesses that Tatham had charged at

11

## Conclusion

The motion court's judgment denying Tatham's PCR motion is affirmed.

_____
Mark D. Pfeiffer, Judge

Karen King Mitchell, Presiding Judge, and Lisa White Hardwick, Judge, concur.

---

Victim in an aggressive manner, which reasonably suggested that Victim was being held and instructed at gunpoint by Tatham. Thus, Tatham's trial counsel exercised competent trial strategy by declining to bring a scared minor child into a courtroom to testify about a collateral matter; nothing about this strategy indicates that Tatham's trial counsel's performance was constitutionally deficient.